UNITED STATES of America, Appellee,

v.

Wayne ROENIGK, Appellant.

No. 86–1682.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1986.

Decided Feb. 4, 1987.

Marshall Dale Evans, Fayetteville, Ark., for appellant.

Larry McCord, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Wayne Roenigk appeals a jury verdict and district court order sentencing him to three years' imprisonment for committing perjury under 18 U.S.C. § 1623 in his alibi witness testimony during a prior cocaine conspiracy trial. We hold that the district court committed reversible error in Roenigk's perjury trial, in admitting prejudicial evidence and argument of the prior cocaine transactions, and remand the case for a new trial.

## I. BACKGROUND.

On February 25, 1985, Roenigk testified as a witness for the defense in the drug conspiracy trial of Edward E. Garrett. The alleged conspiracy was to distribute cocaine "on or about April 1983," in Bella Vista, Arkansas. The charges against Garrett were based on a meeting with co-conspirators Don Church and Wes Cooper, which allegedly took place on April 21 or 22, 1983, in Bella Vista. Roenigk testified on direct examination that he was with Garrett and they were not in Arkansas during the last three weeks of April 1983, and the first few days of May 1983. Garrett was convicted on February 26, 1985.

Thereafter, on September 26, 1985, Roenigk was indicted for committing perjury in the Garrett trial. The indictment charged that Roenigk had perjured himself by testifying he and Garrett were not in Arkansas during the critical dates of the Bella Vista meeting:

On the 25th day of February, 1985, * * WAYNE ROENIGK, while under oath as a witness in a criminal case then being tried before the United States District Court * * * entitled, *United States v. Edward E. Garrett,* * * * did make a false material declaration that is to say:

1. At the time and place aforesaid, the court and jury were engaged in the trial of the aforementioned case wherein Edward E. Garrett * * * was charged with conspiracy to distribute cocaine * * on or about April of 1983.

2. It was a matter material to said trial to determine whether or not Edward E. Garrett met with Don Louis Church and John Wesley Cooper, Jr. in Bella Vista, Arkansas during the last two weeks of April, 1983 to discuss the distribution of cocaine.

3. At the time and place aforesaid WAYNE ROENIGK, while under oath did knowingly declare [on direct examination] before said court and jury with respect to the aforesaid material matter, as follows:

Q. Now Wayne [Roenigk], I believe I asked you if you had an occasion to be with Ed [Garrett] back in April of 1983.

A. April or May?

Q. April of 1983.

A. Yes I did.

Q. Okay. Now in April of '83, will you tell the court exactly what it is that you and Ed did and, if you can, give us an idea of the dates that you were together.

A. ... Well, first we went down into Texas, to Vernon Texas to look at a machine and then a couple of other places ... and we were gone—I can't say exactly but at least three weeks or more.

Q. And this was in the month of April?

A. Right.

Q. Okay. And Ed was with you?

A. Yeah, he was with me the whole time. I was with him, I guess. Anyway it was my vehicle we had.

Q. So would you say that you were out of the State of Arkansas around the 10th or 12th of April?

A. Yeah, definitely, I would say.

Q. Would you say that you were out of the State of Arkansas with Ed throughout that—the rest of the period of April?

A. The biggest part of the month, I would say.

Q. So even going into May, then?

A. It could have been a few days into May.

* * * * * *

The above mentioned testimony of WAYNE ROENIGK, as he then and there well knew and believed was not true in that WAYNE ROENIGK was not outside the State of Arkansas with Eddie Garrett the last three weeks of April and the first part of May, 1983, as he so testified on February 26, 1985, all in violation of 18 U.S.C. § 1623.

On the morning of the first day of the perjury trial, February 27, 1986, Roenigk's attorney filed an oral pretrial motion in limine to prevent the government from introducing evidence relating to the merits of the Garrett cocaine trial which might unduly prejudice the jury. The district court ruled that it was not retrying the cocaine case, and instructed the government to limit the testimony to the allegations of the perjury indictment. The court, referring to paragraph 2 of the indictment, stated "that the matter material to the trial is whether Edward E. Garrett met with Don Lewis [sic] Church during the last two weeks of April, 1983 * * *." (Tr. 3.) The court recognized that the government would need to introduce the events at the time of the April 1983 meeting, but ruled that "repeated evidence of how much of the drugs and all that kind of stuff has nothing to do with whether [Roenigk] told the truth." (Tr. 3.) The court also ruled that testimony by Don Church regarding his conviction in the cocaine conspiracy would be relevant only for purposes of attacking his credibility. (Tr. 4.)

Despite the district court's ruling, the government argued in its opening statement at trial that:

[T]he facts in this case will show that in April, more particularly *April 13, 1983*, three years ago, Don Church entered the United States and proceeded up to Bella Vista, Arkansas, where he met Wes Cooper. *West [sic] Cooper and Don Church had gotten together in Bella Vista for the purpose of selling approximately forty-four pounds of cocaine*

*that they had acquired from a source in Tampa, Florida.* On April 21, 1983, which was eight days after Don Church entered the United States Don Church and Wes Cooper met with Eddie Garrett at Wes Cooper's townhouse at 8 Briton Circle in Bella Vista, Arkansas, and during this meeting, which occurred on the 21st of April, Eddie Garrett agreed to buy *4.4 pounds of cocaine at a price of $100,000.00.* Don Church will tell you that *the 4.4 pounds of cocaine was delivered to Eddie Garrett* in Bella Vista, Arkansas, the same day the sale was made, which I stated was around the 21st of April, 1983.

(Tr. 48.) (Emphasis supplied.)

The government's first witness in the perjury trial was Don Church. Church testified that he had pled guilty to charges of possession of cocaine with intent to distribute in connection with Garrett's conviction and to other unrelated felonies, and was currently serving a sentence in federal prison. (Tr. 72–73). Church also testified that he had picked up cocaine in Tampa, Florida on April 16, 1983, and driven to Bella Vista, where he met with Garrett and Cooper on April 21 or 22, 1983. (Tr. 77–80.) Roenigk's objection was overruled, and Church testified that at the meeting, he, Cooper and Garrett arranged for the sale and distribution of 4.4 pounds of cocaine, which he later delivered to Garrett. (Tr. 80.) In addition, the government introduced into evidence, over Roenigk's objection, Church's address book with Garrett's name in it. (Tr. 80–81).

The government's second witness was FBI agent Bill Hardin. Hardin testified on direct that Garrett had been arrested for conspiracy to distribute cocaine and perjury on November 15, 1984. Roenigk's objection on relevancy was overruled. (Tr. 126.) Hardin then identified an address book found in Garrett's possession at the time of his arrest, and testified that ten of the telephone numbers in the address book matched telephone numbers called from Garrett's home telephone in Arkansas during April and May 1983, based on a copy of Garrett's telephone bill. (Tr. 128–34.)

The government then called Allen Hale, a friend and business associate of Garrett. Hale testified on direct that he had engaged in drug dealings with Garrett, and that Garrett had telephoned him two or three times each month during the period 1978 to 1984. After examining Garrett's telephone bill for April and May 1983, Hale testified that Garrett had called him from Arkansas on April 14, 16, 21 and 27, 1983. (Tr. 148–49.)

During closing argument, the government argued to the jury that the key issue in the case was whether Roenigk had lied in his testimony in the Garrett trial, concerning Garrett's whereabouts in April 1983. The government went on, however, to narrate as follows:

Ladies and gentlemen, the facts in this case have shown that on *April 8th, 1983,* Don Church was in Amsterdam, Holland, where he obtained a Mexican Travel Visa. Five days later on *April 13th, 1983,* Don Church flew to Mexico where he entered the United States. After entering the United States Don Church travelled to Bella Vista, Arkansas, where he met with Wes Cooper the next day, *April 14th, 1983.* The purpose of that meeting between Don Church and Wes Cooper was to arrange for the distribution of *forty-four pounds* of cocaine. Don Church spent the night at Wes Cooper's house and flew to Tampa, Florida, around the 16th of April to pick that *forty-four pounds* of cocaine up. Don Church told you he spent one day in Tampa, Florida, and he returned to Bella Vista with the cocaine on the 19th of April, 1983. Two days later, which would have been the 21st of April, 1983, Eddie Garrett was contacted and a meeting was set up at Wes Cooper's townhouse in Bella Vista, Arkansas.

During the meeting between Wes Cooper, Don Church and Eddie Garrett there was an agreement reached and that agreement was that Eddie Garrett agreed to purchase *4.4 pounds* of the cocaine that Don Church had brought up

from Tampa, Florida, and that was on April 21st, 1983.

(Tr. 319–20.) (Emphasis supplied.)

The government then emphasized to the jury, *"we are not just talking about a small quantity [of cocaine], we are talking about pounds."* (Tr. 320.) (Emphasis supplied.)

The jury returned a verdict of guilty. Thereafter, the district court denied Roenigk's motion for new trial and sentenced him to three years' imprisonment. This appeal followed, in which Roenigk asserts that the evidence was insufficient to support his conviction and the district court's admission of irrelevant evidence relating to Garrett's cocaine transactions was prejudicial error.

## II. DISCUSSION.

### A. Insufficiency of the Evidence.

Roenigk first claims that the district court erred in denying his motion for a directed verdict. He argues that the government did not produce sufficient evidence that he knowingly made a false material statement while testifying at Garrett's trial. He contends that the government never showed that his testimony was untruthful, because he did not testify that he and Garrett were outside of Arkansas *continuously* for three weeks in April 1983. He argues further that any false statements in his testimony were made without knowledge of their falsity. He reasons that, given the large volume of his travel during March, April and May 1983, and the fact that he did not have a chance to refer to records before testifying, he could not have been certain of the precise dates and locations of his travel.

The government must prove five elements to establish a case under 18 U.S.C. § 1623 for perjury:

(i) the declarant must be under oath, (ii) the testimony must be given in a proceeding before a court of the United States, (iii) the witness must knowingly make, (iv) a false statement, and (v) the testimony must be material to the proof of the crime.

*United States v. Boberg,* 565 F.2d 1059, 1061 (8th Cir.1977).

In evaluating the sufficiency of evidence supporting a jury verdict, we view the evidence in the light most favorable to the government and give the government the benefit of all inferences that may be reasonably drawn from the evidence. We will not reverse a jury verdict if there is substantial evidence to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hudson,* 717 F.2d 1211, 1213 (8th Cir.1983); *United States v. Boberg,* 565 F.2d at 1062. A conviction may be based on circumstantial evidence as well as direct evidence, because both require that the jury weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy and ambiguous interference. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), *reh'g denied,* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955); *United States v. Hudson,* 717 F.2d at 1213. In particular, intent and guilty knowledge may be proven by circumstantial evidence, and frequently cannot be proven in any other way. *Id.*

■ The district court did not err in refusing to direct a verdict in Roenigk's favor. The testimony of Don Church and the telephone toll records of Garrett supported the government's charge that Roenigk testified falsely as to Garrett's location during the last three weeks in April 1983. Garrett's address book served as additional evidence that he made telephone calls from his home in Arkansas on a number of dates during April 1983. Although Roenigk did not specifically testify at the cocaine trial that he and Garrett were away from Arkansas continuously during the dates in question, we hold there was substantial evidence that Roenigk's statement that he and Garrett were away for "three weeks or more" in April 1983 was false. We hold further that the government presented sufficient and substantial evidence to the jury

that Roenigk knowingly made false statements during the Garrett trial.

### B. Prejudicial Evidence.

Roenigk next asserts that the government disregarded the district court's ruling on his pretrial motion in limine. He argues that the district court committed reversible error in admitting irrelevant and overly-prejudicial evidence of Garrett's activities as a cocaine distributor. Roenigk contends that the testimony prejudiced the jury, by causing it to base its verdict on his association with Garrett, a convicted drug dealer, rather than on the merits of the government's case.

In its pretrial ruling on Roenigk's motion in limine, the district court recognized that some evidence of Garrett's illegal activities would be necessary for the government to prove its case. The court ordered the government to limit its testimony to the allegations in the indictment, however. The indictment charged that (1) Roenigk had testified under oath as a witness in Garrett's cocaine conspiracy trial in federal court; (2) that the issue of whether Garrett was involved in an April 1983 meeting in Bella Vista, Arkansas, to discuss the distribution of cocaine was material to the government's case against Garrett; and (3) that Roenigk's testimony included false statements regarding Garrett's location in April 1983.[1] The court also specified in its ruling in limine that repeated references to the quantities of cocaine involved and other similar evidence were not relevant to the issue of whether Roenigk committed perjury.

During trial, the district court admitted evidence of the cocaine transactions underlying Garrett's conviction on at least five occasions. In its opening statement and during closing argument, the government specified the amounts of cocaine involved in Garrett's drug conspiracy, as well as where the cocaine came from and other details of the distribution network, from Florida to Holland to Mexico. Roenigk

made no specific objection to these statements, other than his pretrial motion in limine. Nor did Roenigk's attorney object to the testimony of Allen Hale that Garrett was a drug dealer. However, the district court overruled Roenigk's objections to Don Church's testimony regarding Garrett's purchase of 4.4 pounds of cocaine, and to Bill Hardin's testimony regarding Garrett's arrest.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Rule 402 generally provides that all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed.R.Evid. 402. Rule 403 authorizes the district court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. The Advisory Committee defined "unfair prejudice" under Fed.R.Evid. 403 as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 advisory committee's note.

 The government may use evidence of a prior conviction to impeach a witness. *See* Fed.R.Evid. 609(a). But whether the witness is the defendant or a third party, the scope of such examination is strictly limited in order to avoid the confusion resulting from the trial of collateral issues, and also to avoid unfairness to the witness. *United States v. Harding*, 525 F.2d 84, 88 (7th Cir.1975); *see also* Fed.R.Evid. 609(a). Excessive exploration by the government, of the circumstances and details of prior criminal conduct, may be so prejudicial as to amount to plain error. *See United States v. Harding*, 525

---

**1.** We note that the allegations in the indictment mirrored the elements of perjury as set forth in

18 U.S.C. § 1623. *See United States v. Boberg,* 565 F.2d 1059, 1061 (8th Cir.1977).

F.2d at 88–9; *United States v. Dow,* 457 F.2d 246, 250 (7th Cir.1972); *United States v. Mitchell,* 427 F.2d 644, 647 (3d Cir.1970); *United States v. Pennix,* 313 F.2d 524, 531 (4th Cir.1963). The problem with excessive references to the details of prior criminal conduct is that the jury is likely to infer that the defendant is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life. *United States v. Harding,* 525 F.2d at 89; *see also* 1A J. Wigmore, Evidence § 57 at 1185 (Tillers rev. 1983) ("The deep tendency of human nature to punish not because our victim is guilty this time but because he is a bad man and may as well be condemned now that he is caught is a tendency that cannot fail to operate with any jury, in or out of court.")

*United States v. Brumley* is the only perjury case cited by Roenigk in which a court of appeals found undue prejudice under Fed.R.Evid. 403. *United States v. Brumley,* 560 F.2d 1268 (5th Cir.1977). The court of appeals held that the district court erred in permitting the government to introduce evidence of tax chiseling and pollution by a third party. The court of appeals recognized that the evidence was relevant in proving the defendants' motive, but held that "it undoubtedly was expanded far beyond the necessary limits of relevancy and undoubtedly to the prejudice of the defendants who were not on trial for polluting or tax chiseling but for suborning perjury." *Id.* at 1280.

▪ A party must make a timely objection or motion to strike allegedly prejudicial evidence, in order to preserve the issue of admissibility for review. Fed.R. Evid. 103(a)(1). This court will not disturb the district court's admission of evidence over objections absent a showing of abuse of discretion. *Rothgeb v. United States,* 789 F.2d 647, 650 (8th Cir.1986). In contrast, if a party fails to object to the admission of evidence at the trial court level, only "plain error" is preserved for appeal. *United States v. Davis,* 785 F.2d 610, 618 (8th Cir.1986); *see also* Fed.R.Evid. 103(d); Fed.R.Crim.P. 52(b).

▪ A party may file a motion in limine to exclude evidence before it is offered. *See generally Luce v. United States,* 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 463 n. 2, 83 L.Ed.2d 443, 447 n. 2 (1984). However, "[a] motion in limine does not preserve error for review. A party whose motion in limine has been overruled must object when the error the party sought to prevent is about to occur at trial." *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1333 (8th Cir.1985) (citations omitted). *But cf. Sprynczynatyk v. General Motors Corp.,* 771 F.2d 1112, 1118–19 (8th Cir. 1985) (objection at trial after denial of motion in limine not necessary to preserve error for appellate review because specific evidentiary matter was fully briefed and argued and district court implicitly denied request for preliminary hearing on the issue). "Similarly, [an] objection is required to preserve error when an opponent, or the court itself, violates a motion in limine that was granted." *See Collins v. Wayne Corp.,* 621 F.2d 777, 785 (5th Cir.1980). The policy behind this rule is to discourage counsel from refraining from making an objection at trial in order to reserve the opportunity to assert reversible error on appeal. *Id.* at 785–86.

Accordingly, we will review the allegedly prejudicial testimony of Church and Hardin under the abuse of discretion standard, because Roenigk made timely objections at trial. We will review the government's opening statement and closing argument and Hale's testimony for plain error, because of Roenigk's failure to object at trial.

We agree with the district court's order in limine that evidence of Garrett's location and some evidence of his activities during April 1983 were necessary to prove the allegations in the perjury indictment, but that excessive reference to Garrett's crimes could confuse the jury into trying Roenigk as a drug dealer, rather than for perjury. *See generally United States v. Brumley,* 560 F.2d at 1280; *United States v. Harding,* 525 F.2d at 89; 1A J. Wigmore, Evidence § 57 at 1185 (Tillers rev. 1983). To prove its case for perjury under

the indictment, the government was required to show that (1) Roenigk testified as an alibi witness in Garrett's cocaine trial; (2) it was material to the government's case against Garrett that Garrett was in Bella Vista discussing cocaine transactions during the last two weeks in April 1983; and (3) Roenigk testified untruthfully as to Garrett's location in April 1983.

Some of the evidence in question, particularly the government's use of Garrett's telephone toll records and address book, the government's offer of Church's prior felony convictions, the government's use of Church's address book, and Church's testimony concerning the transportation of cocaine from Florida to Arkansas, was not overly prejudicial and related properly to the allegations in the perjury indictment. The government used this evidence to establish Church's credibility as a witness by indicating his frame of reference for the April 21 or 22 meeting in Bella Vista and to blunt the impact of any future attacks on his credibility, as well as to corroborate his testimony as to the Bella Vista meeting.

■ However, despite its ruling in limine, the district court permitted the government to introduce overly prejudicial and irrelevant evidence of Garrett's crimes. The government went beyond the allegations in the indictment by introducing Church's testimony specifying the facts of Garrett's involvement in the sale and distribution of 4.4 pounds of cocaine, and Hardin's testimony as to Garrett's arrest in November 1984 for conspiracy to distribute cocaine and perjury. Moreover, the district court permitted the government, during its opening statement and closing argument to give the jury a detailed account of Garrett's drug transactions. These details, which spanned two continents and covered activities long before the meeting in Bella Vista on April 21 or 22, 1983, and the government's emphasis on the quantities of cocaine involved, were of no relevance to the allegations under Roenigk's indictment for perjury. Nor was this evidence offered for purposes of impeachment under Fed.R. Evid. 609(a).

We recognize the limitations on our power to review the district court's evidentiary decisions. However, the record indicates that the government presented its case in such a manner as to tend to cause the jury to reach its decision on an improper basis.[2] The evidence was calculated to show that Roenigk, because of his association with a convicted drug dealer, was more likely to be guilty of perjury. *Compare United States v. Brumley*, 560 F.2d at 1280. We thus hold that the district court committed reversible error in overruling Roenigk's objections during the direct examination of Church and Hardin, and in allowing the government to present the details and circumstances of Garrett's conviction during its opening statement and closing argument, in violation of the ruling in limine.[3]

---

**2.** We note that a cautionary instruction, explaining to the jury that the defendant was not on trial for any conduct not alleged in the indictment, might have diminished the prejudicial impact of evidence of crimes by third parties in the present case. *See United States v. Young*, 618 F.2d 1281, 1289 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980) (probative value of evidence of similar activities by persons other than the defendant outweighed any prejudicial impact where court clearly instructed jury that defendant was not on trial for any conduct not alleged in indictment charging misapplication of bank funds and mail fraud); *United States v. King*, 572 F.2d 1274, 1275 (8th Cir.1978) (per curiam) (testimony of prior similar crimes by defendant not unduly prejudicial in light of limiting instruction to jury). Such an instruction was *not* given in the present case, however.

**3.** Because we find reversible error in the district court's allowance of prejudicial statements in the testimony of Church and Hardin, and the government's opening statement and closing argument, we will not address the question of whether admission of Hale's testimony, which did not include the same level of detail concerning Garrett's drug conviction, was also reversible error. *See Hutchinson Utilities Comm'n v. Curtiss-Wright Corp.*, 775 F.2d 231, 238 (8th Cir. 1985) (court of appeals may decline to review questions not necessary to its decision).

We note further that our holding is based on our careful review of the record as a whole, and not any single incident of allegedly prejudicial testimony.

*Compare United States v. Harding,* 525 F.2d at 88–9 (finding *plain error* in the admission of details of prior convictions).

### III. CONCLUSION.

The judgment of the district court is reversed, and this case is remanded for a new trial.