856 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Susan M. BURNHAM, Conservator and Guardian of Jeremy
Fischer, a minor, Plaintiff-Appellee,
v.
SEARS, ROEBUCK & COMPANY, a foreign corporation and Roper
Corporation, a foreign corporation, jointly and
severally, Defendants-Appellants.
 No. 87-1599.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1988.
 
 Before LIVELY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Sears, Roebuck & Company and Roper Corporation appeal from the judgment entered upon a jury verdict in favor of plaintiff Susan M. Burnham, Conservator and Guardian of Jeremy Fischer, in this product liability action based upon negligent design of a riding lawn mower. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiff was awarded $600,000 for injuries sustained by her minor son, Jeremy Fischer, in an accident involving a riding lawn mower manufactured by defendant Roper Corporation and sold by defendant Sears. The lawn mower was designed in the 1950s and 1960s and was sold by Roper to Sears in 1978. Sears sold the lawn mower to the initial consumer in 1978.
 
 
 3
 The lawn mower was purchased used by Kenneth Burnham, Jeremy Fischer's uncle, in 1982. On the afternoon of July 8, 1982, Kenneth Burnham was mowing his lawn while his seven-year-old daughter and his nephew, Jeremy Fischer, then age two, were playing in the vicinity. The task was nearly complete, and when Kenneth Burnham had only one strip of grass in the middle of the yard left to cut, he backed the lawn mower in order to get it into position to cut the remaining strip.
 
 
 4
 Before backing, however, Burnham depressed the clutch to stop the mower and shifted from drive to reverse. He glanced over his shoulder to see if there was anything behind him, and, seeing nothing, let up on the clutch and proceeded in reverse. He traveled approximately three feet before he heard his daughter scream, and he immediately stopped the mower and discovered his nephew pinned beneath it.
 
 
 5
 As a result of the accident, Jeremy Fischer's left foot and part of his left leg were amputated. The evidence established that earlier the children had been dragging behind the mower while Burnham cut the lawn.
 
 
 6
 On September 26, 1986, plaintiff filed this action in the United States District Court for the Eastern District of Michigan. In her complaint, plaintiff alleged that the defendants were negligent in failing to give adequate warning of the dangers involved in the operation of the lawn mower and that the defendants were guilty of negligence in designing a mower without a "no mow in reverse" feature.
 
 
 7
 Before the trial, defendants filed a motion in limine in an attempt to prevent admission of evidence regarding a 1980 recommendation to require warnings against mowing in reverse and a 1981 MTD lawn mower incorporating a "no mow in reverse" feature. The district court held a hearing on the motion but, as discussed more fully below, failed to render a definitive ruling before the trial.
 
 
 8
 At the close of the plaintiff's proof, defendants' motion for a directed verdict on the failure to warn claim was granted on the ground that plaintiff had failed to establish causation. The undisputed evidence in the record indicated that Kenneth Burnham could not read. Nevertheless, the case went to the jury on the issue of defective design.
 
 
 9
 Under Michigan law, when liability is predicated upon a claim of defective design, the claim is one sounding in "pure negligence." Prentis v. Yale Mfg. Co., 421 Mich. 670, 365 N.W.2d 176, 186 (1984). The jury heard testimony from two experts who expressed their opinions on the issue of defective design.
 
 
 10
 Plaintiff's expert, Bertram Strauss, testified that his research with the Blade Contact Subcommittee of the Consumer Product Safety Commission project revealed that blade contact injuries accounted for approximately 70 to 75 percent of all lawn mower injuries. He indicated that one in eight blade contact injuries was caused by running over a bystander. Backing over a bystander also accounted for approximately one in eight of all riding lawn mower injuries. Strauss stated that the backover injury was the most tragic because almost invariably the victim was a small child under the age of five and the operator of the mower involved was a parent, grandparent, or sibling.
 
 
 11
 During the course of his work, Strauss recommended to the Consumer Product Safety Commission that all riding mowers be required to have a "no mow in reverse" feature. The proposed regulation was not, however, adopted by the Consumer Product Safety Commission despite the fact that such a device is easily incorporated into a riding lawn mower and would cost approximately two dollars. Strauss testified that use of such a feature would not add other hazards to the operation of the lawn mower.
 
 
 12
 Strauss testified that when a "no mow in reverse" feature was triggered, the blades would stop running in as little as two to five seconds. He stated that a mower manufactured without such a feature is unreasonably dangerous. He further testified that, in his opinion, if such a feature had been incorporated on the mower in question, the injuries to Jeremy Fischer would have been reduced.
 
 
 13
 As anticipated, Strauss testified that in 1980, two years after the lawn mower in question was manufactured and two years before Jeremy Fischer's accident, the American National Standards Institute (ANSI) recommended that riding lawn mowers be accompanied by a warning against mowing in reverse. He further testified that in 1981 MTD Corporation began manufacturing a lawn mower with a "no mow in reverse" feature. No objection to this testimony was made by counsel for defendants.
 
 
 14
 Defendants' expert, George Clarke, was the engineer responsible for the original design of the lawn mower involved in Jeremy Fischer's accident. Clarke testified that the possibility of incorporating a "no mow in reverse" feature was discussed but rejected when the subject mower was designed. He indicated that consumers needed and wanted to be able to mow in reverse in the course of the normal operation of a lawn mower. Thus, the feature was not incorporated into the design because consumers found it undesirable and because Roper's research indicated that consumers would attempt to alter the machine in order to mow in reverse. Roper's research further indicated that clogging could result if such a device were utilized.
 
 
 15
 Clarke further testified that even if such a feature had been incorporated on the mower in question, the accident would have occurred and the injury sustained by Jeremy Fischer would have been as severe. He stated that, because of the speed of the blades, the blades would not have stopped rotating until the mower had traveled eight to twelve feet after the blades had been disengaged. In the present case, the undisputed evidence indicated that Kenneth Burnham drove the mower in reverse approximately three feet before he stopped upon hearing his daughter scream. Clarke stated that the designer of a lawn mower simply cannot eliminate the possibility that children will come into contact with the lawn mower if they are allowed to play in the vicinity of the lawn mowing operation.
 
 
 16
 As earlier stated, the jury returned a verdict for the plaintiff and awarded damages in the amount of $600,000. Defendants have appealed, raising essentially two contentions. First, defendants argue that the trial court erred in allowing Strauss to testify as to standards implemented and machines manufactured after 1978. Defendants contend that this error was exacerbated by the district court's charge that such evidence could be considered in determining whether the mower in question had been negligently designed.
 
 
 17
 As their second claim of error, defendants contend that the district court abused its discretion in refusing to grant their motion for a new trial on the ground that the verdict was against the manifest weight of the evidence. Once again, they contend that this error was exacerbated by a jury instruction which did not clearly and accurately describe the burden plaintiff was required to carry before damages could be awarded.
 
 II.
 A.
 
 18
 As indicated above, defendants filed a motion in limine in an attempt to prevent admission of evidence regarding the 1980 ANSI standards and a 1981 lawn mower design incorporating the "no mow in reverse" feature. After the district court heard argument on the motion, the following ruling was made.
 
 
 19
 Let me predicate my response on a different approach. I don't like to give administrative opinions in advance. Let me hear the evidence, or you can make your objections. I'll excuse the jury and will look at it again. But what I think the utility of a trial is, and that's why I'm always so hesitant to grant motions to exclude evidence, my intent is to allow evidence, not to disallow evidence. That as a trial judge, if I have to rule, I want to know where we are in the case, what the proviso of the case has been up to this point, and then there is a solidity that seems to be absent when I am debating it with you.
 
 
 20
 J.A. at 104-05. Thus, the district court did not make a definitive ruling on the motion in limine before the trial. Thereafter, when Strauss testified as to the 1981 design of the MTD lawn mower and the 1980 ANSI recommendation, no objection to the testimony was made.[1]
 
 
 21
 As a consequence, we conclude that these evidentiary rulings were not properly preserved for appellate review. " 'A motion in limine does not preserve error for review. A party whose motion in limine has been overruled must object when the error the party sought to prevent is about to occur at trial.' " United States v. Roenigk, 810 F.2d 809, 815 (8th Cir.1987) (quoting Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1333 (8th Cir.1985)); see also Petty v. Ideco, 761 F.2d 1146, 1150 (5th Cir.1985); Rojas v. Richardson, 703 F.2d 186, 188-90 (5th Cir.1983); cf. Adams v. Fuqua Industries, 820 F.2d 271, 274 (8th Cir.1987) (motion in limine coupled with objection at trial sufficient to preserve error for review); Dixon v. International Harvester Co., 754 F.2d 573, 583 n. 8 (5th Cir.1985) (motion in limine coupled with two specific objections at trial made the district court aware of objection and thus was sufficient to preserve issue for appellate review). Accordingly, the district court's evidentiary rulings may serve as a basis for reversal only if they rose to the level of plain error. Roenigk, 810 F.2d at 815; Petty, 761 F.2d at 1150.
 
 
 22
 With regard to the 1981 lawn mower design, there was some initial discussion as to whether the evidence was properly admitted under Michigan's version of Federal Rule of Evidence 407 as construed in Downie v. Kent Products, Inc., 420 Mich. 197, 362 N.W.2d 605 (1984), and Granger v. Fruehauf Corp., 147 Mich.App. 190, 383 N.W.2d 162 (1985), rev'd on other grounds, 429 Mich. 1, 412 N.W.2d 199 (1987).[2] However, at oral argument, the parties conceded that this situation is not governed by Rule 407 as Rule 407 does not apply to changes made by a nondefendant. See Denolf v. Frank L. Jursik Co., 395 Mich. 661, 238 N.W.2d 1 (1976); see also Dixon, 754 F.2d at 583. Thus, the only issue for our determination is whether the district court committed plain error in refusing to exclude the evidence as irrelevant.
 
 
 23
 It is well-settled, of course, that district courts have wide discretion in determining whether evidence is relevant. See, e.g., McLaurin v. Fischer, 768 F.2d 98, 104 (6th Cir.1985). Under the facts of this case, we conclude that the district court did not commit plain error by failing to exclude the evidence.
 
 
 24
 Throughout the course of this litigation, defendants have taken the position that consumers consider the "no mow in reverse" feature undesirable. They maintain that this was the case when the mower was manufactured and continues to be the case today. Defendants' expert stated that, after participating in studies occurring as late as 1986, he continues to be of the opinion that a "no mow in reverse" feature is undesirable. However, by showing that another manufacturer has chosen to incorporate such a device, plaintiff has merely established that that manufacturer disagrees with defendants' beliefs regarding the desirability of such a feature. Under these circumstances, we conclude that the district court did not commit reversible error by admitting evidence without objection that MTD manufactured a mower in 1981 which incorporated a "no mow in reverse" feature. See Denolf, supra (evidence of subsequent action taken by third party admissible when relevant).
 
 
 25
 We reach the identical conclusion with regard to evidence concerning the 1980 recommendation that all mowers be equipped with a warning against mowing in reverse. This evidence was introduced during plaintiff's case-in-chief, when the failure to warn claim was still in the case. Evidence regarding the promulgation of a standard promoting such a warning was relevant to that aspect of the case.
 
 
 26
 However, as indicated above, the district court granted defendants' motion for a directed verdict on the warning claim. Thereafter, the parties stipulated to a jury instruction explaining that all evidence bearing on the issue of failure to warn should be excluded from their consideration. Because the 1980 standard was relevant to this aspect of the case, and because the jury was told on not one but two occasions to disregard it, we conclude that admission of the evidence did not constitute reversible error.
 
 
 27
 Our conclusion regarding the propriety of the admission of the evidence regarding subsequent lawn mower design leads us to the conclusion that the district court's instruction permitting consideration of the evidence likewise does not mandate reversal of the judgment below. See Downie, 420 Mich. at 197; 362 N.W.2d at 605. This is especially true in view of the deference accorded the district court's interpretation of the law of the state in which he sits. See Martin v. Joseph Harris Co., 767 F.2d 296 (6th Cir.1985).
 
 B.
 
 28
 The second issue presented in this appeal is whether the district court abused its discretion in denying defendants' motion for a new trial on the ground that the verdict was against the manifest weight of the evidence. In reviewing the district court's disposition of the motion, our standard of review is highly deferential.
 
 
 29
 "In a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law." Toth v. Yoder Co., 749 F.2d 1190, 1197 (6th Cir.1984). "Federal law leaves the decision of whether to reject a jury's verdict to the sound discretion of the trial judge." Williams v. Union Carbide Corp., 790 F.2d 552, 554 (6th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 591, 93 L.Ed.2d 592 (1986). A judge's decision will not be reversed absent an abuse of discretion. Toth, 749 F.2d at 1197; Bruner v. Dunaway, 684 F.2d 422, 425 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983). Traditionally, appellate courts have been reluctant to overturn a trial court's order granting a new trial. Indeed, this court has noted that "there are few cases where an appellate court has reversed a decision of a district court in either granting or denying a motion for a new trial based on the ground that the verdict was against the weight of the evidence." Duncan v. Duncan, 377 F.2d 49, 53 (6th Cir.), cert. denied, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). However, there is not "a complete lack of precedent for such action." Id.
 
 
 30
 DRCDT, Inc. v. Integrity Ins. Co., 816 F.2d 273, 276 (6th Cir.1987).
 
 
 31
 Under Michigan law, the theory of liability underlying design defect cases is pure negligence. A risk-utility analysis is utilized for evaluating such cases.
 
 
 32
 "When a jury decides that the risk of harm outweighs the utility of a particular design (that the product is not as safe as it should be) it is saying that in choosing the particular design and cost tradeoffs, the manufacturer exposed the consumer to greater risk of danger than he should have. Conceptually and analytically, this approach bespeaks negligence."
 
 
 33
 The competing factors to be weighed under a risk-utility balancing test invite the trier of fact to consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made.
 
 
 34
 Prentis, 421 Mich. 688, 365 N.W.2d at 184 (quoting Birnbaum, Unmasking the test for design defect: From negligence [to warranty] to strict liability to negligence, 33 Van.L.R. 593, 610 (1980)). In addition to establishing a duty to exercise reasonable care and a breach of that duty by making an unreasonable design choice, the plaintiff in a design defect case must also establish that the unreasonable design choice proximately caused the damage incurred. See Rhea v. Massey-Ferguson, Inc., 767 F.2d 266, 269 (6th Cir.1985) (per curiam).
 
 
 35
 In the present case, Strauss' testimony clearly provides ample support for the jury verdict. Strauss testified that the "no mow in reverse" feature was feasible and desirable. He stated that, in his opinion, a lawn mower failing to incorporate such a feature is unreasonably dangerous. Moreover, he testified that, in his opinion, the injuries sustained by Jeremy Fischer would have been less severe if a "no mow in reverse" feature had been incorporated in the lawn mower. He indicated that the severity of Jeremy's injuries would have been minimized because the blades would not have been turning under power at the time the accident occurred.
 
 
 36
 Under these circumstances, we conclude that there was ample evidentiary support for the jury's conclusion that defendants' negligence proximately caused the injury sustained by Jeremy Fischer. The mere fact that the defendants' expert disagreed with the testimony provided by Strauss is an insufficient basis upon which to order a new trial. See Williams v. Union Carbide Corp., 790 F.2d 552, 554-55 (6th Cir.), cert. denied, 107 S.Ct. 591 (1986).
 
 
 37
 Defendants also argue that the prejudice caused by the alleged failure of proof was exacerbated by erroneous jury instructions. Our review of the jury instructions indicates that, when taken as a whole, they fairly represented the governing law with regard to the essential elements of plaintiff's claim. Accordingly, we reject defendants' argument that the jury instructions mandate reversal for a new trial. See Rhea, 767 F.2d at 269-70.
 
 
 38
 Defendants' final contention regarding the jury instructions is that the district court committed reversible error by telling the jury that it "may" find for the defendants if plaintiff failed to establish any of the elements of her claim by a preponderance of the evidence. No objection was made to this aspect of the instruction, and, thus, it may be reviewed only for plain error. See Murphy v. Owens-Illinois, Inc., 779 F.2d 340, 345-46 (6th Cir.1985). The record reflects that the district court used the term "may" when referring to the ability to render a verdict in favor of either party. Under these circumstances, the charge taken as a whole fairly represents the nature of the burden plaintiff was required to carry in order to prevail. Accordingly, defendants are not entitled to reversal on this basis.
 
 III.
 
 39
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 When plaintiff's counsel attempted to introduce the standards themselves, defendants objected, and this objection was sustained
 
 
 [2]
 Rule 407 provides:
 When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.