# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3941

_____

| | | |
|---|---|---|
| White Consolidated Industries, Inc., doing business as WCI Freezer Division, also known as Frigidaire Company, | * * * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota |
| McGill Manufacturing Company, Inc., Emerson Electric Company, | * * * | |
| Appellees. | * | |

_____

Submitted:    May 13, 1998

Filed:    January 14, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
        LAUGHREY,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, sitting by designation.

White Consolidated Industries, Inc. (Frigidaire), a subsidiary of Frigidaire Company, appeals from a final judgment entered in the United States District Court[2] for the District of Minnesota upon a jury verdict in favor of McGill Manufacturing Co., Inc. (McGill), a subsidiary of Emerson Electric Co. (Emerson), on its action for breach of contract. For reversal, Frigidaire argues the district court erred in (1) denying its motion for partial summary judgment and motions in limine, (2) giving certain jury instructions and submitting the special verdict form, and (3) denying its motion for new trial. For the reasons discussed below, we affirm the judgment of the district court.

**Jurisdiction**

This case was originally filed in Minnesota state court. McGill and Emerson removed the case to federal court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[3] Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure. In this diversity case, Minnesota law controls the substantive issues. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938).

---

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[3]Frigidaire is a Delaware corporation with its principal place of business in Ohio; McGill is an Indiana corporation with its principal place of business in Indiana; and the amount in controversy exceeded $50,000. Emerson is a Missouri corporation with its principal place of business in Missouri. Although Emerson is an appellee in this case, Frigidaire has not challenged the district court's entry of summary judgment on the claim of Emerson's vicarious liability. Therefore, we address only the issues involving McGill.

## Background

Frigidaire manufactures freezers in St. Cloud, Minnesota. In 1989 Frigidaire began designing a new line of commercial freezers. Frigidaire contacted McGill about obtaining an electrical switch, which McGill had advertised as "water resistant," for placement in the freezers. On January 9, 1991, McGill sent Frigidaire samples of the switches and a price quotation setting forth the conditions of sale on its reverse side. Those terms limited McGill's warranty obligations to repayment of the purchase price or replacement of the returned products. The price quotation also indicated that McGill offered to sell the switches at the quoted price and the offer was made for immediate acceptance by Frigidaire. After Frigidaire received the samples and price quotation, its tests indicated that the switches were not completely resistant to water. Frigidaire contacted McGill about a solution and McGill's engineers recommended the addition of a peripheral gasket to the original switch to prevent moisture penetration. The parties agreed that the addition of the gasket would increase the price of the switch.

On January 14, 1991, Frigidaire sent McGill a blanket purchase order for 30 switches fitted with the additional gaskets. The blanket purchase order set forth Frigidaire's terms and conditions of purchase which included express warranties of merchantability and fitness for a particular purpose. The blanket purchase order stated, in part:

> 1. ACCEPTANCE. This Purchase Order is to be accepted in writing by Seller by signing and returning promptly to Buyer the Acknowledgment Copy, but if for any reason Seller should fail to sign and return to Buyer the Acknowledgment Copy, the commencement of any work or performance of any services hereunder by Seller shall constitute acceptance by Seller of this Purchase Order and all its terms and conditions. Acceptance of this Purchase Order is hereby expressly limited to the terms hereof. Any terms proposed by Seller which add to, vary from, or conflict with the terms herein shall be void and the terms hereof

-3-

shall govern if this Purchase Order has been issued by Buyer in response to an offer the terms of which are additional to or different from any of the provisions hereof, then the issuance of this Purchase Order by Buyer shall constitute an acceptance of such offer subject to the express condition that the Seller assent that this Purchase Order constitutes the entire agreement between Buyer and Seller with respect to the subject matter hereof and the subject matter of such offer.

. . . .

7. WARRANTY. Seller warrants that all goods or services ordered or provided hereunder will conform in all respects to the specifications, drawings, samples, or quality control or other procedure or description whether furnished by Seller or provided by Buyer, and will be merchantable and free from any defects in material, design, and workmanship; and Seller further warrants that all material purchased hereunder that is manufactured in accordance with the Seller's specifications shall be fit and sufficient for the purposes for which it was intended. Seller agrees that the foregoing warranty shall survive acceptance of and payment for the material, and that Seller shall save Buyer harmless from any loss, damage or expense, whatsoever, including attorneys' fees, that the Buyer may incur as a result of any breach of such warranties. These warranties shall survive delivery and inspection of all or a part of the goods or services.

The blanket purchase order, however, set the price of the switches at the original, gasket-less price. It did not correctly state the price of the switches Frigidaire intended to purchase, that is, the switches with the additional gaskets.

On January 15, 1991, McGill sent a computer-generated acknowledgment form in response to Frigidaire's blanket purchase order. The acknowledgment form set forth terms similar to the terms on the original price quotation, but included additional limitations and exclusions of warranties. On January 25, 1991, McGill's sales

representative changed the price on the purchase order form to reflect the additional cost of the gasket, signed the form and returned it to Frigidaire.

Thereafter, McGill sent the modified switches to Frigidaire, which incorporated them into the freezers. Frigidaire produced 1,717 freezers from March to May 1991 with the gasket-enhanced switches (referred to as "Version I" switches at trial). Sometime in March or April 1991, some of the Version I switches began to fail. Frigidaire contacted McGill about the failing Version I switches, at which time McGill recommended additional modifications, resulting in the so-called "Version II" switches. Frigidaire purchased these switches at an even higher price than the Version I switches and incorporated them into 4,694 freezers. In July 1991 some of the Version II switches also began to fail. Frigidaire again contacted McGill and McGill recommended further modifications, creating the "Version III" switches. Each of these transactions included an exchange of acknowledgment forms and purchase order forms, but, unlike the initial purchase order form, no forms were signed or returned by the recipient.

Frigidaire sued McGill in state court for breach of contract, breach of implied and express warranties, tort liability, and negligent misrepresentation. Frigidaire also sued Emerson on a theory of vicarious liability. Frigidaire sought damages in excess of $1.5 million based on the cost of repairing or replacing the failed Version I and Version II switches with Version III switches and compensating customers for loss of food occurring when the switches failed. Alter McGill and Emerson removed the case to federal district court on the basis of diversity jurisdiction, the parties filed cross-motions for partial summary judgment. The district court denied Frigidaire's motion for partial summary judgment and granted in part and denied in part McGill's and Emerson's motions for partial summary judgment. White Consolidated Industries, Inc. v. McGill Manufacturing Co., Civil No. 4-95-752 (D. Minn. Mar. 31, 1997) (mem. op. and order on cross-motions for partial summary judgment). The district court dismissed Emerson and also dismissed Frigidaire's tort and negligent misrepresentation claims.

-5-

Slip op. at 5-9. The district court denied summary judgment on the breach of warranty claims because there were genuine issues of material fact in dispute. Id. at 6-7. The district court also rejected Frigidaire's argument that the purchase order constituted the parties' contract. Id. at 7-8.

At a pretrial hearing, Frigidaire and McGill filed several motions in limine. The district court denied most of these motions, but took under advisement Frigidaire's motion to exclude evidence of McGill's contract terms as set forth in the acknowledgment form. Id., slip op. at 1 (June 27, 1997) (order denying motions in limine). The district court then concluded that the writings of the parties were insufficient to establish a contract and that, pursuant to Minn. Stat. § 336.2-207,[4] the contract between the parties included only those terms upon which Frigidaire's blanket purchase order and McGill's acknowledgment form agreed. Id. at 3. The district court also ruled that evidence of McGill's proposed contract was relevant and admissible. Id.

The case was tried before a jury. Frigidaire objected to several of the district court's proposed jury instructions. Instruction No. 8 informed the jury that the contract between Frigidaire and McGill consisted of those terms upon which Frigidaire's blanket purchase order and McGill's acknowledgment form agreed. The jury was further instructed that, where the two documents did not agree, specifically in regards to the warranties, the contract included implied warranties made part of the contract by operation of law. The district court, relying on § 2-207(3) of the UCC,[5] instructed the

_____

[4]Because Minnesota has adopted the Uniform Commercial Code (UCC), Minn. Stat. §§ 336.1-101 to 336.10-108, which is the applicable substantive law in this case, we will refer directly to those provisions of the UCC.

[5]UCC § 2–207 provides:

Additional Terms in Acceptance or Confirmation

(1) A definite and seasonable expression of acceptance or a written

jury in the application of express warranties, such as price and quantity, and implied warranties, such as merchantability and fitness for a particular purpose. Instruction No. 14 set forth the elements of breach of an implied warranty of fitness for a particular purpose. The jury returned a special verdict finding that (1) McGill had made express warranties to Frigidaire and had breached those warranties, but that the breach was not the direct cause of any damages to Frigidaire; (2) McGill had breached the implied warranty of merchantability, but that the breach was not the direct cause of any damages to Frigidaire; and (3) McGill had not breached any implied warranty of fitness for a particular purpose and, therefore, was not the direct cause of any damages to Frigidaire. Based on these findings, the jury did not award any damages. Frigidaire then filed a motion for a new trial, arguing that the jury's verdict was inadequate, perverse, and against the greater weight of the evidence and that the instructions were

---

confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
      (a) the offer expressly limits acceptance to the terms of the offer;
      (b) they materially alter it; or
      (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

erroneous. The district court concluded that the evidence supported the jury's verdict, found no instruction errors and denied Frigidaire's motion. Id., slip op. at 2 (Sept. 10, 1997) (order denying motion for a new trial). This appeal followed.

**Discussion**

I. Denial of Motion for Partial Summary Judgment

Frigidaire first argues the district court erred in denying its motion for partial summary judgment. Frigidaire also argues the district court erred in denying its motions in limine to exclude evidence of McGill's contract terms and in instructing the jury. As noted by the district court, the motions in limine and the instructions, as well as the motion for new trial in part, essentially asked the district court to reconsider its order denying Frigidaire's motion for partial summary judgment.

A denial of summary judgment is interlocutory in nature and is ordinarily not appealable after trial and judgment. See Cowan v. Strafford R-VI School District, 140 F.3d 1153, 1157 (8th Cir. 1998); Metropolitan Life Insurance Co. v. Golden Triangle, 121 F.3d 351, 354 (8th Cir. 1997); Johnson International Co. v. Jackson National Life Insurance Co., 19 F.3d 431, 434 (8th Cir. 1994); see generally l5B Charles Alan Wright et al., Federal Practice and Procedure § 3914.28, at 210-11 & n.18 (2d ed. 1992). "[E]ven if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied." Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir. 1992), cert. denied, 507 U.S. 973 (1993). "Failure to renew a summary judgment argument--when denial was based on factual disputes-- in a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1) at the close of all the evidence is considered a waiver of the issue on appeal." Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1521 (10th Cir. 1997) (noting that, given difficulty of determining whether an issue is purely a question of law

or fact, prudent counsel should renew summary judgment grounds in a Rule 50 motion for judgment as a matter of law at the close of all the evidence, and again, if necessary, after the jury has returned a verdict and trial has concluded).  However, "when the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment."  Id. (citations omitted); cf. Rekhi v. Wildwood Industries, Inc., 61 F.3d 1313, 1318 (7th Cir. 1995) (noting that "the principle that an order denying summary judgment is rendered moot by trial and subsequent judgment on the merits is intended for cases in which the basis for the denial was that the party opposing the motion had presented enough evidence to go to trial").

With respect to the issue of contract interpretation, Frigidaire's motion for partial summary judgment was not phrased as, nor understood by the district court to be, a challenge to the sufficiency of the evidence. Instead, the motion raised a purely legal question, that is, which document set forth the terms of the parties' contract, and thus is properly reviewable on appeal. The interpretation of a contract is a question of law for the court to decide.  See, e.g., Lamb Engineering & Construction Co. v. Nebraska Public Power District, 103 F.3d 1422, 1430 (8th Cir. 1997); United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996), cert. denied, 117 S. Ct. 1281 (1997); Maurice Sunderland Architecture, Inc. v. Simon, 5 F.3d 334, 337 (8th Cir. 1993).

For reversal, Frigidaire argues that the district court erred in holding that this was a "battle of the forms" case within the meaning of UCC § 2-207.  Frigidaire argues that its purchase order, which contained certain warranties, including a warranty of fitness for a particular purpose, exclusively set forth the terms of the parties' contract. Frigidaire argues that, by signing the purchase order, McGill expressly accepted all the terms contained in the purchase order.  Frigidaire argues that McGill's acknowledgment form, which excluded warranties (including a warranty of fitness for a particular purpose) and limited remedies, was merely a counter-offer which it did not accept.  We disagree.

On January 9, 1991, McGill made an initial offer of sale to Frigidaire by mailing a price quotation.  Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract. See Litton Microwave Cooking Products v. Leviton Manufacturing Co., 15 F.3d 790, 794 (8th Cir. 1994) (Litton). In Litton, the court determined that a price quotation clearly, definitely, and explicitly manifested a willingness to become bound as required by Minnesota law, see Lefkowitz v. Great Minneapolis Surplus Store, Inc., 251 Minn. 188, 86 N.W.2d 689, 691(1957) (Lefkowitz), but left too many terms open for negotiation to be considered an offer. Litton, 15 F.3d at 794-95.  The price quotation could not be considered a legally valid offer required to commence a "battle of the forms." Id. at 794. In the present case, McGill's price quotation provided that its offer was subject to immediate acceptance by Frigidaire.  It was sufficiently detailed and indicated that acceptance was all that was needed to ripen the offer into a contract. The open terms that prevented the price quotation from being a valid offer in Litton, 15 F.3d at 795, are not present in this case. Because McGill manifested a "clear, definite and explicit" offer of sale, the price quotation qualifies as a valid offer.  See id. (citing A. Belanger & Sons, Inc. v. United States ex rel. National United States Radiator Corp., 275 F.2d 372 (1st Cir. 1960)); Lefkowitz, 86 N.W.2d at 691; cf. Brown Machine, Division of John Brown, Inc. v Hercules, Inc., 770 S.W.2d 416, 419 (Mo. Ct. App. 1989) (holding that a price quotation "can amount to an offer creating the power of acceptance . . . [if it] appear[s] from the price quote that assent to the quote is all that is needed to ripen the offer into a contract").

Frigidaire accepted McGill's offer of sale and proposed its own terms for the sale in its initial blanket purchase order dated January 14, 1991, and received by McGill on January 21, 1991. If a party to a contract expresses acceptance of an offer, while simultaneously proposing additional or different terms not in the offer, that acceptance is a valid acceptance. See UCC § 2-207(1).   In such a case, UCC § 2-207(2) provides

-10-

for the treatment of any additional terms.[6]   Frigidaire, however, accepted McGill's offer only on the condition that McGill assent to each and every term in the purchase order. If an "acceptance is expressly made conditional on assent to . . . additional or different terms" and assent is not forthcoming, then an expression of acceptance, including acceptance by performance, is not a valid acceptance. UCC § 2-207(1); see also Falcon Tankers, Inc. v. Litton Systems, Inc., 355 A.2d 898, 906 (Del. Super. Ct. 1976) (Falcon).

Frigidaire's purchase order conditioned acceptance on McGill's assent to a merger clause providing that the terms of the purchase order, alone, expressed the agreement of the parties. The purchase order was "an acceptance of [the Seller's] offer subject to the express condition that the Seller assent that this [p]urchase [o]rder constitutes the entire agreement between Buyer and Seller." Purchase order, ¶ 1. In other words, the purchase order was a conditional acceptance.  See Ralph Shrader, Inc. v. Diamond International Corp., 833 F.2d 1210, 1215 (6th Cir. 1987) (Ralph Shrader). In Ralph Shrader, the Sixth Circuit held that, when a party limited acceptance to "[t]he terms set forth on the reverse side," it was a conditional acceptance.  Id.  The Sixth Circuit rejected the argument that language in a contract had to mimic the "expressly made conditional" language of UCC § 2-207(1) in order to be a conditional acceptance. Id. n.4; see also Step-Saver Data Systems, Inc. v. WYSE Technology, 939 F.2d 91, 101 (3d Cir. 1991) (holding that a conditional acceptance can be manifested merely in a party's conduct).  To require the exact language of the UCC would be too formalistic and inconsistent with the UCC's requirement that its provisions be liberally construed. UCC § 1-102(1); see also Ralph Shrader, 833 F.2d at 1215 n.4.  Because Frigidaire conditioned its acceptance on McGill's assent to the proposed terms in its purchase order, a contract on Frigidaire's terms resulted only if McGill assented.

---

[6]We do not decide in this case the much debated question of whether UCC § 2-207(2) provides for the treatment of additional and different terms or only additional terms.

McGill did not assent to Frigidaire's conditions. McGill's sales representative changed one of the terms of the sale when she corrected the price on the purchase order to reflect the price of the Version I switch (modified to include a peripheral gasket) rather than the price of the original, gasket-less switch set forth in the price quotation. In doing so, McGill rejected the express condition Frigidaire placed on acceptance: assent to each and every term in the purchase order. If an acceptance is conditioned on assent to new terms, and assent is not forthcoming, the transaction aborts. See Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1166 (6th Cir. 1972) (Dorton); Uniroyal, Inc. v. Chambers Gasket & Manufacturing Co., 380 N.E.2d 571, 575 (Ind. Ct. App. 1978) (Uniroyal).

Frigidaire argues that the signature of McGill's sales representative acted as a complete assent to the terms proposed in the purchase order. For support, Frigidaire relies on Falcon, 355 A.2d at 906 (holding that the offeror's signature on the offeree's conditional acceptance bound the offeror to all the terms therein). Frigidaire's argument, however, ignores a crucial difference between Falcon and the present case: McGill changed one of the terms (the price) on Frigidaire's purchase order form. By changing the terms, McGill did not assent to the conditions Frigidaire placed on its acceptance. Because McGill never assented to the additional terms, Frigidaire, according to its own purchase order, did not accept McGill's offer. Because there was no acceptance of the offer of sale, there was no contract at that time. Slip op. at 3 (June 27, 1997) (order denying motions in limine).

The district court recognized that the parties' performance of the sale, however, established a contract. Where the writings of the parties do not establish a contract, performance by both parties may be sufficient to establish a contract under UCC § 2-207(3). See Dorton, 453 F.2d at 1166; Uniroyal, 380 N.E.2d at 575.

-12-

> In many cases, as where goods are shipped, accepted and paid for before any dispute arises, there is no question whether a contract has been made. In such cases, where the writings of the parties do not establish a contract, it is not necessary to determine which act or document constituted the offer and which the acceptance. . . . The only question is what terms are included in the contract, and subsection (3) furnishes the governing rule.

UCC § 2-207 cmt. 7 (citation omitted). The writings of Frigidaire and McGill did not establish a contract because McGill never assented to Frigidaire's conditional acceptance. Pursuant to UCC § 2-207(3), the district court correctly found as a matter of law that no written contract existed between the parties, but that a contract existed on the basis of the parties' performance, the terms of which contract included those terms on which the writings of the parties agreed, with the remaining terms, in particular the terms for the warranties, determined by other provisions of the UCC. Therefore, the district court properly rejected Frigidaire's argument that its purchase order exclusively set forth the terms of the parties' contract. We hold that the district court did not err in denying Frigidaire's motion for partial summary judgment because Frigidaire was not entitled to judgment as a matter of law on the contract interpretation issue.

Frigidaire also argues the district court erred in denying its motions in limine to exclude McGill's acknowledgment form. We review the denial of the motions in limine, which is essentially based upon an evidentiary ruling, for abuse of discretion. See, e.g., United States v. Roenigk, 810 F.2d 809, 815 (8th Cir. 1987). Frigidaire argues the acknowledgment form should not have been admitted into evidence because its purchase order alone contained the terms of the parties contract. As discussed above, the purchase order did not exclusively set forth the terms of the parties' contract. Rather, pursuant to UCC § 2-207(3), the terms of the parties' contract included the terms on which the writings of the parties agreed, with the remaining terms, including the warranties, determined by other provisions of the UCC. The acknowledgment form was one of the

writings of the parties and was thus admissible.  The district court did not abuse its discretion in denying the motions in limine.

II.  <u>Jury Instructions</u>

Frigidaire next argues the district court erred in failing to instruct the jury that the purchase order alone contained the terms of the parties' contract.  Frigidaire also argues the district court erred in submitting the special verdict form for the same reason.  We disagree.  As discussed above, the purchase order did not exclusively set forth the terms of the parties' contract.  The instructions given correctly instructed the jury that the terms of the parties' contract included the terms on which the writings of the parties agreed and warranties made part of the contract by operation of law and correctly set forth the elements of breach of the warranty of fitness for a particular purpose.  The special verdict form correctly did not refer to the purchase order as exclusively setting forth the terms of the parties' contract.

III. <u>Motion for New Trial</u>

Frigidaire next argues the district court erred in denying its motion for new trial because the case was tried under an erroneous interpretation of the contract.  We disagree.  This argument is based on the same assumption that the purchase order exclusively set forth the terms of the parties' contract.

**Conclusion**

For the above-stated reasons, we hold that the district court did not err in denying Frigidaire's motion for summary judgment, motions in limine, and motion for a new trial. In addition, the district court did not err in its instructions to the jury. Accordingly, we affirm the judgment of the district court.

-14-

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.