2003 UT App 158

**STATE of Utah, Plaintiff and Appellee,**

v.

**Frank Lyle DOMINGUEZ, Defendant and Appellant.**

No. 20010649–CA.

Court of Appeals of Utah.

May 22, 2003.

Rehearing Denied July 8, 2003.

Randall W. Richards, Public Defenders Association, Ogden, for Appellant.

Mark L. Shurtleff, Attorney Generals Office, and Karen A. Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON,
GREENWOOD, and THORNE.

OPINION

GREENWOOD, Judge.

¶ 1 A jury convicted Frank Lyle Dominguez (Defendant) of murder, a first degree felony under Utah Code Ann. § 76–5–203 (1999). Defendant appeals, claiming numerous errors at trial. We affirm.

## BACKGROUND [1]

¶ 2 On October 15, 2000, Waleed Elalawnah was found dead in his store, the Boulevard Market in Ogden. After being arrested by Ogden City Police officers on an unrelated outstanding warrant, Defendant confessed to killing Mr. Elalawnah and was charged with the murder.

1. On appeal, this court "relate[s] the facts in the light most favorable to the jury's verdict." *State* *v. Vargas,* 2001 UT 5, ¶ 2, 20 P.3d 271 (quotations and citation omitted).

¶ 3 On the day of the murder, a birthday party that began the previous day was underway at the house of Defendant's grandmother, Ricarla Dominguez. Defendant was at the party, although testimony at trial differed as to the specific time he was there. During the party, Defendant's father and grandfather got into a fight, prompting Defendant's grandmother to call the police. Defendant and others testified that Defendant hid when the police arrived because he was in violation of his parole. Additionally, there was testimony that Defendant was bragging at the party about killing a man.

¶ 4 Four days later, on October 19, police were called to an apartment to investigate complaints of drug use. Defendant was in the apartment, and initially gave the police a false name. He eventually told the officers his real name and was then arrested on an outstanding warrant, unrelated to the Boulevard Market murder. On the way to the police station, Defendant told the officer that he had some information about the Boulevard Market murder that he would exchange for not being charged.

¶ 5 At the Ogden City Police Department, Defendant spoke first to Officer Kevin Mann, and later to Officer Shane Minor; both officers had investigated the Boulevard Market murder. Officer Mann testified that Defendant offered information about the murder because "he didn't want to go back to prison." During their conversation, Defendant related several versions of the murder, naming two different women as the assailant. Later in the day, after Officer Mann was called away on other business, Defendant confessed to Officer Minor that he shot the store owner.

¶ 6 Later that evening, after Defendant signed a document stating that he had received his Miranda warnings and was willing to talk, a formal written statement was taken. Defendant then agreed to go with several officers to the Boulevard Market and walk them through the scene of the murder. Despite the fact that all evidence of the murder had been removed, Defendant correctly iden-

tified the murder location and described the manner in which the victim was shot.[2]

¶ 7 At the pretrial conference, the State requested clarification on two evidentiary items. First, because Defendant's confessions were made after his arrest on an outstanding warrant, the State asked the court whether information that Defendant was a parolee would be allowed. Second, because the State intended to present evidence of an incident at the prison (the prison incident), the State asked the court whether it would be permitted to lay foundation for the prison incident. Foundation included the fact that Defendant was an inmate when the prison incident took place.

¶ 8 Counsel for Defendant responded that he opposed the evidence about Defendant's parolee status, "but we recognize the context in which they want it presented to the jury." Regarding evidence about the prison incident, defense counsel stated, "My position as defense counsel is that [the evidence] is perhaps more prejudicial than probative."

¶ 9 The trial court stated that the prison incident "comes in in the context in which it was made. No one has to go into the reasons as to why he's being housed there." The trial court also stated that an explanation of Defendant's parole status was unnecessary, but discussions that took place after Defendant was arrested for a parole violation could be introduced. If Defendant made statements about being on parole, then those statements would be admissible.

¶ 10 After a five day jury trial, Defendant was convicted on all counts and was later sentenced to six years to life. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 Defendant first argues that the trial court's pretrial ruling was error because it allowed the admission of prejudicial testimony in violation of Utah Rule of Evidence 404(b). This court reviews admission of prior crimes evidence for abuse of discretion.

---

2. Defendant testified that he just followed the officers through the shop, agreeing to the questions they posed. In contrast, the officers testi-

fied that Defendant was in the lead and that he identified the murder site and gave specific details without any prompting.

*See State v. Decorso,* 1999 UT 57,¶ 18, 993 P.2d 837.

¶ 12 Defendant next argues that the State elicited testimony beyond the scope of the pretrial ruling. Because he did not object to the testimony at trial, Defendant argues plain error. To establish plain error, Defendant must show: "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant...." *State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). Each of these requirements must be met to establish plain error. *See id.* at 1209.

¶ 13 Next, Defendant claims the trial court erred when it admitted a witness's statement through a detective, after the witness was declared to be unavailable based on her refusal to testify. Defendant did not specifically object to the testimony. This court has held, "the grounds for [an] objection must be distinctly and specifically stated." *State v. Winward,* 941 P.2d 627, 633 (Utah Ct.App.1997) (quotations and citation omitted). Because Defendant did not specifically preserve this claim for appeal, he must show plain error.

¶ 14 Defendant also argues the trial court improperly denied his motion for a mistrial. "The decision to grant or deny a mistrial ... rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Calliham,* 2002 UT 86,¶ 42, 55 P.3d 573.

¶ 15 Finally, Defendant argues that this court should reverse the jury verdict based on cumulative error. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." *State v. Colwell,* 2000 UT 8,¶ 44, 994 P.2d 177 (quotations and citations omitted).

## ANALYSIS

### I. Pretrial Ruling and Evidence Admitted

¶ 16 Defendant argues that the trial court's pretrial ruling concerning admission of evidence was error. The trial court ruled that limited evidence of Defendant's parole status and the prison incident was admissible. Specifically, the State was not to elicit testimony about Defendant's status as a parolee, despite the fact that Defendant came into police custody on an outstanding warrant. The trial court stated, "It isn't necessary to explain that he's on parole. You just explain the discussion that occurred and who was present and what the people were there for." Further, in presenting evidence of the prison incident, the State could not elicit testimony about the reasons Defendant was in prison, but the context for the incident was admissible. Defendant also contends evidence was admitted that violated the trial court's pretrial ruling.

### A. Pretrial Ruling

¶ 17 Defendant maintains that the ruling was an abuse of discretion because it allowed the State to elicit prejudicial testimony from several witnesses concerning Defendant's prior bad acts, in violation of rule 404(b) of the Utah Rules of Evidence. In response, the State argues that Defendant did not properly preserve this issue for appeal because he failed to object at trial on the same rule 404(b) grounds urged at the pretrial proceeding.

¶ 18 Contrary to the State's argument, Defendant was not required to object during trial to evidence offered in accordance with the court's pretrial ruling. Utah Rule of Evidence 103 states, "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Utah R. Evid. 103(2); *see State v. Saunders,* 1999 UT 59,¶¶ 18–19, 992 P.2d 951 (holding because defendant objected to court's pretrial ruling he was not required to make further objection at trial to preserve issue for appeal); *State v. Johnson,* 748 P.2d 1069, 1071 (Utah 1987) (noting defendant not required to object or renew motion to suppress at trial where trial judge is same judge who ruled on pretrial motion).

¶ 19 "[I]n order to preserve a claim or an objection for appellate review, the defendant

must raise a timely or contemporaneous claim or objection." *State v. Cram*, 2002 UT 37,¶ 9, 46 P.3d 230. Although Defendant's objections could have been clearer,[3] they were raised during the pretrial hearing and provided the trial court with an opportunity to address the objections. *See id.* at ¶ 10. Therefore, Defendant was not required to object at trial to preserve the issues for appeal because the pretrial hearing was held on the record, Defendant timely objected, the judge made a definitive ruling on the motion, and the same judge presided at trial.

¶ 20 Defendant argues the pretrial ruling was an abuse of discretion because the trial court failed to determine: (1) whether the evidence was offered "for a proper, noncharacter purpose under 404(b), (2) whether [the] evidence meets the requirements of rule 402, and (3) whether [the] evidence meets the requirements of rule 403." *State v. Decorso*, 1999 UT 57,¶ 20, 993 P.2d 837. Generally, evidence of prior crimes is prohibited "unless such evidence is probative of an issue other than criminal propensity or character and is not unduly prejudicial." *State v. Saunders*, 1999 UT 59,¶ 15, 992 P.2d 951. This is based on the principle that "[t]he admission of evidence of prior crimes may have such a powerful tendency to mislead the finder of fact as to subvert the constitutional principle that a defendant may be convicted only if guilty beyond a reasonable doubt of a specific crime charged." *Id.*

■ ¶ 21 The first consideration is whether the evidence was admitted for a proper, noncharacter purpose under rule 404(b). *See* Utah R. Evid. 404(b); *Decorso*, 1999 UT 57 at ¶ 21, 993 P.2d 837. In this case, the trial court's ruling limited testimony to that necessary as context for admissible evidence. The testimony about Defendant's parole status was admitted as context for Defendant being in police custody, and through statements made by Defendant. Evidence that Defendant was in prison was admitted as context for Defendant's threat to a prison guard that he would kill him "like he killed that other

motherf* * * * *." This limited testimony was not admitted "only to show the defendant's propensity to commit crime," *id.* at ¶ 24, but rather for a proper, noncharacter purpose.

■ ¶ 22 Next, the evidence is considered under rule 402, which excludes all evidence that is not relevant. *See* Utah R. Evid. 402. The evidence at issue relates to confessions or statements Defendant made about killing someone. Accordingly, the evidence clearly "tends to prove some fact that is material to the crime charged." *Decorso*, 1999 UT 57 at ¶ 22, 993 P.2d 837.

¶ 23 Finally, the evidence must be considered under rule 403, which requires that the probative value of the evidence must not be "substantially outweighed by the danger of unfair prejudice." Utah R. Evid. 403. The trial court's limitation on this evidence reasonably assured it was more probative than prejudicial. Therefore, we find the trial court's pretrial ruling was not an abuse of discretion.

### B. Evidence Admitted Beyond Scope of Pretrial Ruling

¶ 24 Defendant also appears to argue that some of the testimony at trial exceeded the scope of the pretrial ruling. The State maintains that even if evidence beyond the scope of the ruling was allowed, Defendant failed to object during trial.

¶ 25 Acknowledging that he did not object during trial, Defendant argues plain error. To establish plain error, Defendant must show: "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant. . . ." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Each of these requirements must be met in order to establish plain error. *See id.* at 1209.

■ ¶ 26 "Excessive exploration by the government, of the circumstances and details

---

**3.** Defense counsel responded that he opposed the evidence about Defendant being a parolee, "but we recognize the context in which they want it presented to the jury." Regarding the evidence

about the prison incident, defense counsel stated, "My position as defense counsel is that [the evidence] is perhaps more prejudicial than probative."

of prior criminal conduct, may be so prejudicial as to amount to plain error." *United States v. Roenigk*, 810 F.2d 809, 814 (8th Cir.1987). In *Roenigk*, the defendant argued that despite the pretrial ruling limiting the government's testimony to allegations in the indictment, specific evidence of another conviction was improperly admitted on at least five occasions. *See id.* The court noted, "The problem with excessive references to the details of prior criminal conduct is that the jury is likely to infer that the defendant is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life." *Id.* at 815. The court held that the trial court committed reversible error because "overly prejudicial and irrelevant evidence" beyond the indictment was admitted. *Id.* at 816. In this case, we review the record as a whole to determine if evidence admitted beyond the scope of the pretrial ruling amounts to plain error. *See id.* at 816 n. 3 (stating "our holding is based on our careful review of the record as a whole, and not any single incident of allegedly prejudicial testimony").

### i. Evidence of Defendant's Status as a Parolee

■ ¶ 27 Defendant argues that the State elicited evidence about his parolee status that exceeded the scope of the pretrial ruling. In response, the State maintains it adhered to the ruling and presented no evidence of Defendant's parolee status violating the ruling in its case-in-chief. An analysis of the record reveals the following: the State called Officer Jason Thomas of the Ogden City Police Department. On direct examination, the prosecutor inquired whether Defendant was arrested "for false information? Was there anything else?" Officer Thomas responded, "I believe he had a warrant." The State then called Officer Kevin Mann, also of the Ogden City Police Department. The prosecutor asked, "What kind of a deal was [Defendant] looking for?" Officer Mann responded, "He told me that he didn't want to go back to prison." Next, the State called Officer Shane Minor, an investigator for the Ogden City Police Department at the time of the murder. On direct examination Officer Minor testified that Defendant told him, "I'm

on the run. I don't want to go back to prison right now."

¶ 28 All of the above testimony is within the parameters of the pretrial order. The limited allusions to Defendant's parole status were necessary as context for Defendant's statements to the police. The testimony with the most potential for prejudice was actually elicited by Defendant. The defense called Defendant's father, and asked whether Defendant left the house during the two-day party. On cross-examination by the State, the witness was asked the same question. The witness testified that Defendant hid during the party, that he knew Defendant was wanted for parole violations, and that Defendant had absconded. However, this testimony cannot be attributed to the State as it was within the scope of Defendant's direct examination; therefore the testimony was not beyond the scope of the ruling.

¶ 29 Because this testimony was permitted under the pretrial ruling, there was no error. Therefore, the first prong of the plain error test is not met. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993) (stating that defendant must first show an error exists). Accordingly, Defendant's argument fails.

### ii. The Prison Incident

■ ¶ 30 Defendant also argues that the State "flooded the jury with extraneous and damaging information" when it presented evidence of the prison incident. Again, Defendant must demonstrate plain error. Under the pretrial ruling, the trial court stated that context for the prison incident could come in, but "[n]o one has to go into the reasons as to why he's being housed there." A review of the record reveals the following testimony about the prison incident.

¶ 31 Doug Cook of the Utah State Prison was called by the State and testified that he is the housing lieutenant for the Uintah One maximum security facility. He described the prison incident: "[W]e were basically, at the request of mental health, asked to remove inmate's Dominguez's clothes to ensure against him having anything that he could harm himself or others with. In the process of cutting Mr. Dominguez's clothes off he

made comments to me.... He says, Cook, some day I'll get my hands on you and kill you like I did that other motherf\* \* \* \* \*."

¶ 32 Cook testified on redirect that Defendant "indicated he was homicidal." The State maintains that this answer was elicited based on Defendant's cross-examination, in which Cook was asked why an inmate would request to speak· to a crisis worker. Cook responded, "I can't get into why they make the request." Defense counsel then asked, "What kinds of explanations? ... What types of things would precipitate them meeting with a crisis worker?" Cook responded, "Any time they feel homicidal or suicidal or feel that they are not mentally stable."

¶ 33 Because the testimony complained of was initially elicited by defense counsel's cross-examination of Cook, any error was invited. "We have held repeatedly that on appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993).

¶ 34 Similarly, evidence admitted concerning Defendant's prior conviction for a drive-by shooting was also initially elicited by Defendant.[4] The evidence Defendant complains of was relevant to Defendant's testimony on direct examination where he denied committing the drive-by shooting. "When a defendant on direct examination attempts to explain away the effect of the conviction or to minimize his guilt, a defendant may then be cross-examined on any facts which are relevant to the direct examination." *State v. Tucker*, 800 P.2d 819, 823 (Utah Ct.App.1990) (quotations and citation omitted). Accordingly, the trial court did not commit plain error when it admitted this testimony. *See id.* (concluding no plain error where defendant "opened the door" by "making misstatements").

4. Defendant testified on direct that he was "misunderstood" by those at the party who said he killed someone. Defendant testified that he was talking about going to prison for "discharging a firearm from a motor vehicle.... I didn't do the actual shooting." Later, the State was permitted to call Officer Gallegos as a rebuttal witness.

## II.  Hearsay Testimony

¶ 35 Defendant argues that the trial court erred by admitting hearsay testimony of Teresa Brown (Brown) through Detective Weloth. Detective Weloth had a discussion with Brown after she contacted the police department with information about the Boulevard Market murder. The State called Brown, who testified that she gave Defendant a ride from his grandmother's house on the day of the murder; she then refused to testify further. After instructing the witness to answer several times, the court dismissed the jury and ruled that Brown was unavailable. Based on her unavailability, the State requested permission to call Detective Weloth to testify about Brown's prior statement to him.

¶ 36 Defendant did not *specifically* object to Detective Weloth's testimony at the trial court. He first objected to the ruling that Brown was unavailable, and then objected a second time, but without any specificity. " '[A] contemporaneous objection or some form of *specific* preservation of claims of error must be made a part of the trial court record before an appellate court will review such claims on appeal.' Importantly, the grounds for the objection must be distinctly and specifically stated." *State v. Winward*, 941 P.2d 627, 633 (Utah Ct.App.1997) (alteration in original) (citations omitted). Defendant's objections did not preserve the issues he now argues on appeal, that the testimony was not reliable and that he did not have notice of the hearsay testimony. *See* Utah R. Evid. 804(b)(5) (requiring hearsay exceptions have "circumstantial guarantees of trustworthiness," and notice be given to an "adverse party sufficiently in advance of the trial").

¶ 37 Based on Defendant's failure to specifically object and preserve the issue for appeal, Defendant's claim that allowing the testimony was error fails.[5]

Gallegos testified about interviews he had with Defendant in 1996 concerning the shooting.

5. Further, the testimony was reliable under the facts of this case. Brown testified that she gave Defendant a ride on the night of the murder. Detective Weloth testified, "[Defendant] told

### III. Motion for Mistrial

¶ 38 Defendant moved for a mistrial after a witness for the State testified about statements Defendant made during a "plea negotiation." *See* Utah R. Evid. 410 (stating that statements made in course of plea negotiations are inadmissible). The State's witness, Detective Lucas, testified that Defendant said, "I'm willing to plead to first degree murder, but there's two things that I want." Shortly after this testimony, which was elicited during defense counsel's voir dire, the jury was dismissed. The court denied Defendant's mistrial motion because the defense solicited the testimony. "This court has stated that ' "[a] party who leads a court into error cannot later complain of that error to obtain reversal." ' " *State v. Price*, 909 P.2d 256, 262 (Utah Ct.App.1995) (alteration in original) (quoting *Clark v. Farmers Ins. Exch.*, 893 P.2d 598, 600 n. 4 (Utah Ct.App.1995)) (citation omitted).

¶ 39 "The decision to grant or deny a mistrial ... rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Calliham*, 2002 UT 86,¶ 42, 55 P.3d 573. " 'Unless a review of the record shows that the court's decision is *plainly wrong* in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion.' " *State v. Decorso*, 1999 UT 57,¶ 38, 993 P.2d 837 (quoting *State v. Robertson*, 932 P.2d 1219, 1231 (Utah 1997)). We agree with the trial court that Defendant took a risk when he initiated the voir dire line of questioning in front of the jury.[6] Defendant solicited the testimony, did not immediately object to the witness's answer, and the jury was instructed to disregard the statement.[7]

¶ 40 The trial court did not abuse its discretion by denying Defendant's motion for a mistrial where Defendant invited the error by eliciting the testimony in front of the jury, and where the conviction resulted from the totality of the evidence.

### IV. Cumulative Error

¶ 41 Defendant maintains this court should reverse based on cumulative error. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." *State v. Colwell*, 2000 UT 8,¶ 44, 994 P.2d 177 (quotations and citations omitted). Since we find no error, reversal is not required. *See State v. Decorso*, 1999 UT 57,¶ 81, 993 P.2d 837 (holding cumulative error argument moot where court rejected each of defendant's arguments that trial court committed error).

¶ 42 Further, Defendant's various confessions, corroborated by the visit to the crime scene, are overwhelming evidence of Defendant's guilt. The following witnesses testified that Defendant confessed to killing someone: 1) Ricarla Dominguez (Defendant's grandmother) testified that during the birthday party, on October 15, she heard Defendant say that he had killed a man; 2) John Dominguez (Defendant's uncle) testified that he heard Defendant tell his grandmother, at

---

[Brown] that he had killed someone, that he had a gun.... At one point [Defendant] changed and said that he had killed three people but later changed that back to he had killed one person." When considered in light of other evidence, including similar testimony about Defendant's various stories from detectives, officers, Defendant's family, and Defendant himself, this testimony is reliable.

6. Additionally, "[T]he trial court is in the best position to determine whether the incident prejudiced the jury." *State v. Widdison*, 2001 UT 60,¶ 54, 28 P.3d 1278.

7. Other appellate decisions have denied a motion for a mistrial for similar reasons. *See State v. Price*, 909 P.2d 256, 262 (Utah Ct.App.1995) (affirming "the trial court's denial of defendant's motion for a mistrial not only because defendant has failed to show prejudice, but also because defendant declined to avoid any error that might have occurred"); *see also State v. Wach*, 2001 UT 35,¶ 46, 24 P.3d 948 (denying motion for mistrial that was based on witness's unsolicited, isolated remark, where totality of evidence caused jury to convict defendant); *State v. Decorso*, 1999 UT 57,¶ 39, 993 P.2d 837 (denying motion for mistrial where reference to other crimes was vague, followed lengthy examinations, and was insignificant); *State v. Kiriluk*, 1999 UT App 30,¶ 19, 975 P.2d 469 ("A defendant has the burden of persuading this court that the conduct complained of prejudiced the outcome of the trial.") (quotations and citation omitted).

the party, that he shot someone; he also told Detective Lucas that when he and Defendant heard a news report about the Boulevard Market murder, Defendant said that he did it; 3) Detective Mann testified that Defendant told him various stories about the murder, including specific, unreleased facts, and accused someone else; 4) Officer Minor testified that Defendant told him a series of stories about the murder, ultimately admitting to the murder and describing unpublished details; Officer Minor also testified about walking though the store with Defendant after Defendant signed documents waiving his rights; and 5) Detective Lucas testified about walking though the store with Defendant, listening to him describe how and where the murder was committed.

## CONCLUSION

¶ 43 Defendant's argument that multiple errors committed by the trial court warrant reversal fails. First, the trial court did not abuse its discretion in its pretrial ruling allowing limited testimony of Defendant's parole and prison status. Second, Defendant has not demonstrated plain error in the admission of testimony he alleges exceeded the scope of the pretrial ruling. Third, Defendant failed to specifically object to the admission of Teresa Brown's testimony through Detective Weloth, and Defendant does not demonstrate plain error on appeal. Finally, the denial of the motion for a mistrial was not an abuse of discretion. We therefore affirm the jury verdict.

¶ 44 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and WILLIAM A. THORNE JR., Judge.