2005 UT App 493

**SALT LAKE CITY, Plaintiff
and Appellee,**

v.

**Rocky Chad WILLIAMS, Defendant
and Appellant.**

No. 20040942–CA.

Court of Appeals of Utah.

Nov. 10, 2005.

Jason Schatz, Schatz & Anderson, Salt Lake City, for Appellant.

Jeanne M. Robison and Scott A. Fisher, Sale Lake City Attorney Office, Salt Lake City, for Appellee.

Before Judges GREENWOOD, McHUGH, and THORNE.

## OPINION

McHUGH, Judge:

¶ 1 Rocky Chad Williams appeals his convictions for making threats against life or property and violation of a protective order, *see* Utah Code Ann. §§ 76–5–107 to –108 (2003), on the grounds that the trial court improperly admitted hearsay testimony in violation of Williams's Sixth Amendment right to confrontation. This is an issue of first impression for this court under the United States Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). For the reasons set forth herein, we affirm.

## BACKGROUND

¶ 2 On July 17, 2003, Dycie Allred and Eric Sanders attended a movie in the Sugar House area of Salt Lake City. Williams coincidentally was in attendance at the same movie. Allred had previously obtained a protective order against Williams prohibiting him from having any contact with her.

¶ 3 When Allred and Sanders were exiting the parking lot after the movie, Williams passed in front of them. Allred exclaimed, "Oh, my God, there's [Williams]." Upon seeing Williams, Allred became upset enough that Sanders convinced her to pull over so that they could switch drivers. While the vehicle was stopped and before Sanders could replace Allred as the driver, Williams

pulled his car in front of theirs at an angle two feet from the front bumper. Allred became further upset by this conduct and began crying and shaking. Sanders used his cellular telephone to dial 911.

¶ 4 Williams exited his vehicle, pointed at Allred, and shouted something at Allred with a look of rage on his face. Allred exclaimed that Williams had just threatened to kill her. Allred put her car in reverse and proceeded westbound. Williams followed Allred's vehicle, also traveling westbound. When Allred turned her vehicle around and proceeded eastbound, Williams did the same and continued to follow the vehicle driven by Allred. Williams tried to get past Allred's car several times to force her to stop. He was gesturing and yelling at Allred. During this pursuit, Sanders spoke with the dispatch operator regarding the events that were occurring and information relayed to him by Allred. The chase continued with Williams "tailgating" Allred and following her when she again changed direction. Eventually, Williams stopped pursuing Allred's vehicle.

¶ 5 At the instruction of the dispatch operator, Allred waited in a parking lot for police officers to arrive. After twenty to thirty minutes, Allred and Sanders proceeded to the home of Sanders's sister and again contacted the police. At that time, Allred gave a telephonic statement to Officer Don Ouimette of the Salt Lake City Police Department. Officer Ouimette prepared a written report of that statement.

¶ 6 Williams was charged with making threats against life or property, a class B misdemeanor, in violation of Utah Code section 76–5–107; violating a protective order, a class A misdemeanor, in violation of Utah Code section 76–5–108; and interfering with a legal arrest, a class B misdemeanor, in violation of Utah Code section 76–8–305.[1] *See* Utah Code Ann. §§ 76–5–107, –5–108, –8–305 (2003).

¶ 7 Before trial, Allred passed away due to a heart condition. Prior to her death, Allred had not testified about the events of July 17, 2003, and had not been subjected to cross-

examination. Williams filed motions to suppress the hearsay statements of Allred both before and after the United States Supreme Court issued its decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which held that testimonial out-of-court statements are admissible only if the witness was unavailable and there was a prior opportunity for cross-examination.

¶ 8 The trial court denied the motion to suppress, and the matter was tried before a jury on July 9, 2004. A portion of the 911 tape recording on which Allred could be heard stating that Williams had threatened to kill her was played for the jury. Counsel for the defense did not object to admission of the tape. The trial court also admitted Officer Ouimette's report of his interview with Allred and testimony from Sanders concerning Allred's statements while the events were unfolding. Officer Ouimette's report was admitted by counsel for Williams.

¶ 9 The jury returned a verdict of guilty on both remaining counts. Williams appeals his conviction on the grounds that the trial court erred in allowing the hearsay statements of Allred into evidence through Sanders and Officer Ouimette.

## ISSUE AND STANDARD OF REVIEW

¶ 10 The issue before this court is whether the trial court properly admitted the statements of Allred despite the fact that she had not been subjected to prior cross-examination. We review for correctness the district court's legal conclusion that the challenged statements were admissible under the excited utterance and present sense impression exceptions to the hearsay rule. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994). We recognize, however, that admissibility of evidence under the hearsay exceptions requires the application of facts to the legal requirements of the rule and that the trial court has some discretion in making this determination. *See N.D. v. A.B.,* 2003 UT App 215, ¶ 11, 73 P.3d 971. The district

---

1. Upon motion of Williams, the charge of interfering with a legal arrest was severed from the other charges.

court's subsidiary factual determinations are reviewed for clear error. *See Cal Wadsworth Constr. v. City of St. George,* 898 P.2d 1372, 1378 (Utah 1995).

## ANALYSIS

### I.  The *Crawford* Decision

¶ 11 This case presents this court's first opportunity to apply the United States Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[2] That decision replaced the existing standard for admission of hearsay statements against a criminal defendant with a requirement that testimonial statements could be admitted only if the declarant was unavailable and if there had been a prior opportunity for cross-examination. *See id.* at 68, 124 S.Ct. 1354. The *Crawford* Court, however, left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.*

¶ 12 Although the *Crawford* Court did not provide a definition of "testimonial," it did give some guidance to that analysis. The defendant in *Crawford* was charged with assault and attempted murder. *See id.* at 40, 124 S.Ct. 1354. The State introduced a recorded statement made by the defendant's wife (Wife) during the police investigation. *See id.* Wife was unavailable to testify at trial because of Washington State's marital privilege. *See id.* The defendant argued that the admission of the hearsay statements of Wife violated his Sixth Amendment privilege to be " 'confronted with the witnesses against him.'" *Id.* (quoting U.S. Const. amend. VI).

¶ 13 Prior to *Crawford,* the hearsay statements of an unavailable witness could be admitted against a criminal defendant if the witness was unavailable and if the statements bore "adequate indicia of reliability." *Id.* (quotations and citation omitted). Reliability could "be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448

U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *overruled by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Under this standard, the trial court could allow the hearsay testimony if it fell within one of the recognized exceptions to the hearsay rule and the witness was unavailable. *See Crawford,* 541 U.S. at 42, 124 S.Ct. 1354.

¶ 14 The recent decision in *Crawford* rejected that test, instead holding that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. The fact that the evidence falls within a firmly rooted hearsay objection based on inherent reliability is no longer enough to satisfy the defendant's right to confrontation if the hearsay statement is testimonial. *See id.* at 68–69, 124 S.Ct. 1354. The *Crawford* Court stated that the Sixth Amendment "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 124 S.Ct. 1354. In contrast, nontestimonial hearsay can be admitted under generally accepted exceptions to the hearsay rule without running afoul of the Sixth Amendment. *See id.* at 68, 124 S.Ct. 1354. Thus, before this court can apply the appropriate test, we must first determine whether the proffered hearsay statements are testimonial or nontestimonial.

¶ 15 The focus of the Confrontation Clause is on witnesses who bear testimony against the accused. " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* at 51, 124 S.Ct. 1354 (alteration in original) (quoting 1 N. Webster, *An American Dictionary of the English Language* (1828)). The *Crawford* Court identified three possible tests for what statements should be considered testimonial. *See id.* The first, suggested by the *Crawford* defendant, would include "ex parte in-court testimony or its functional equivalent—that

---

**2.**  Although issues based on *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), were raised in *State v. Duanyai,* 2004 UT App 349 (mem.), *cert. denied,* 109 P.3d 804

(Utah 2005), this court held that the defendant waived that argument by failing to make any attempt to cross-examine the minor witness. *See id.*

is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* (quotations and citation omitted). The second possible definition was from a prior plurality decision of the Supreme Court, which concluded that "testimonial" included " 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" *Id.* at 51–52, 124 S.Ct. 1354 (alteration in original) (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment)). The last definition considered by the *Crawford* majority was suggested by the National Association of Criminal Defense Lawyers as amicus curiae: "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52, 124 S.Ct. 1354 (quotations and citation omitted).

¶ 16 The Supreme Court held that the recorded statement of Wife fell within even the most narrow definition of testimonial statements suggested because she made it

> while in police custody, herself a potential suspect in the case. Indeed, she had been told that whether she would be released "depend[ed] on how the investigation continue[d]." In response to often leading questions from police detectives, she implicated her husband in [the] stabbing and at least arguably undermined his self-defense claim.

*Id.* at 65, 124 S.Ct. 1354 (first alteration in original) (citation omitted). The *Crawford* Court held that some statements qualify as testimonial under any definition. *See id.* at 52, 124 S.Ct. 1354. Among those types of statements are "ex parte testimony at a preliminary hearing" and "[s]tatements taken by police officers in the course of interrogations." *Id.* The Court concluded that "[p]olice interrogations bear a striking resemblance to examinations by justices of the peace in England." *Id.* The abuse of those examinations was, in large part, the impetus

for the Sixth Amendment right of a defendant to confront the witnesses against him. *See id.* at 50–51, 124 S.Ct. 1354. Because the questioning of Wife was a police interrogation, it fell within any of the proposed definitions of testimonial and did not require further refinement of that standard. *See id.* at 68–69, 124 S.Ct. 1354.

¶ 17 Since the decision in *Crawford,* a number of courts have attempted to define "testimonial." In *United States v. Summers,* 414 F.3d 1287 (10th Cir.2005), the Tenth Circuit Court of Appeals concluded that statements made by a codefendant after he had been taken into physical custody but before he had been informed of his *Miranda* rights were testimonial. *See id.* at 1302–03. In reaching that conclusion, the Tenth Circuit held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Id.* at 1302; *see United States v. Hendricks,* 395 F.3d 173, 181 (3d Cir.2005) (holding statements nontestimonial where declarants did not make them in belief that they might be used at later trial); *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004) (adopting definition of testimonial based on "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime"); *United States v. Saget,* 377 F.3d 223, 228 (2d Cir.2004) (holding that *Crawford* suggests that "the declarant's awareness or expectation that his or her statements may later be used at a trial" is a determinative factor in assessing whether the statement is testimonial), *cert. denied,* 543 U.S. 1079, 125 S.Ct. 938, 160 L.Ed.2d 821 (2005); *see also Hammon v. State,* 829 N.E.2d 444, 456 (Ind.2005) ("[A] 'testimonial' statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings."), *cert. granted,* —— U.S. ——, 126 S.Ct. 552, 2005 WL 1914510 (2005).

## II. Statements Challenged by Williams

¶ 18 In this case, Williams objects to the admission of certain testimony from Sanders and to the report of Officer Ouimette. Sand-

ers testified that Allred exclaimed, "Oh, my God, there's [Williams]," when she first noticed him after the movie.[3] He also testified that, while the confrontation was in progress and he was on the telephone with the 911 dispatcher, Allred stated that Williams had just threatened to kill her. As we explain in greater detail below, under any definition suggested in *Crawford* these statements were not testimonial when made by Allred and can be admitted if they fall within a firmly rooted hearsay objection.[4] Although the police report of Officer Ouimette raises closer questions concerning its testimonial nature, Williams cannot now complain of error he invited by entering the report into evidence. For the reasons set forth herein, the decision of the trial court is affirmed.

■ ¶ 19 When Allred made the statements that were admitted through Sanders, she was not in police custody, was not responding to a police inquiry, and was not providing the information for use in a prosecution or investigation. Her statement, "Oh, my God, there's [Williams]," was simply a factual statement made in surprise when she first noticed Williams. Furthermore, it was not made to an agent of the police or prosecution and therefore "bears little resemblance to the civil-law abuses the Confrontation Clause targeted." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354; *see also Hammon*, 829 N.E.2d at 454 ("A spontaneous exclamation by a victim to a friend, family member, or coworker is not likely to be regarded as testimonial.").

■ ¶ 20 The statement that Williams had threatened to kill her was made by Allred when Sanders was reporting the incident to the 911 dispatcher. Allred can be heard on the tape of the 911 call that was played to the jury.[5] Although this statement was made to Sanders, it was made during the 911 call when Allred could reasonably have expected

that her statements would be repeated to the dispatcher.

¶ 21 In a similar situation, the Illinois Court of Appeals evaluated such statements as if they had been made directly to the 911 operator. In *State v. West*, 355 Ill.App.3d 28, 291 Ill.Dec. 72, 823 N.E.2d 82 (2005), a cab driver was raped and beaten by multiple assailants who had hired her taxi. *See id.* at 84, 823 N.E.2d 82. She escaped from the perpetrators and sought assistance at the residence of Dorothy Jackson. *See id.* at 85, 823 N.E.2d 82. Jackson placed a call to the 911 dispatcher and proceeded to ask the victim questions posed by the dispatcher and then to relay the answers. *See id.* As in this case, the victim could be heard on the tape recording of the 911 call. *See id.* The victim was murdered before trial and the 911 tape was admitted into evidence over the defendant's objection. *See id.* On appeal, the defendant claimed that the 911 operator was interrogating the victim through Jackson for the purpose of obtaining information to be used in future legal proceedings. *See id.* at 87–88, 823 N.E.2d 82. The Illinois Court of Appeals adopted a case-specific test for evaluating tape recordings of calls made to 911 dispatchers, with a focus on whether (1) the statement was volunteered to the dispatcher for the purpose of initiating police action or criminal prosecution; or (2) the statement was provided in response to an interrogation for the purpose of gathering evidence for use in a criminal prosecution. *See id.* at 91, 823 N.E.2d 82. The court then concluded that the statements to the dispatcher relating to the nature of the attack, the victim's medical needs, the victim's age, and the victim's location were nontestimonial. *See id.* In contrast, information related to a description of her stolen vehicle, the direction the assailants had fled, and the items of personal property stolen were held to be testimonial and inadmissible without prior

---

**3.** Although Williams challenged the admissibility of this statement in his brief on appeal, he conceded at oral argument that it was not testimonial.

**4.** We do not hold that *Crawford* requires that "testimonial" be defined as narrowly as possible. Rather, we hold that, even under the broadest

definition, the statements at issue are not "testimonial."

**5.** Williams argues, however, that Allred's statement that he had threatened to kill her was inaudible and that even Sanders was unable to understand it.

opportunity for cross-examination. *See id.* at 91–92, 823 N.E.2d 82.

¶ 22 Since *Crawford*, a number of other courts have also considered the circumstances under which statements made to a 911 dispatcher are testimonial. Some courts hold that all statements made during calls to a 911 emergency dispatcher are not testimonial because they are akin to a "cry for help" rather than an attempt to investigate or prosecute a crime against the defendant. *See, e.g., People v. Corella*, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770, 776 (2004) (concluding that 911 call not testimonial because statements not knowingly given in response to structured police ·questioning); *People v. Moscat*, 3 Misc.3d 739, 777 N.Y.S.2d 875, 879 (N.Y.City Crim.Ct.2004) (concluding that 911 call not testimonial because it "has its genesis in the urgent desire of a citizen to be rescued from immediate peril"). In contrast, the Sixth Circuit Court of Appeals held that all statements made during a call to a 911 dispatcher are testimonial because the dispatcher is a government official and the declarant should reasonably expect the statements to be used in a future trial. *See United States v. Arnold*, 410 F.3d 895, 903–04 (6th Cir.2005).

¶ 23 Other courts, like the *West* court, have concluded that the inquiry into whether statements made during a 911 call are testimonial must be made on a case-by-case basis. *See, e.g., United States v. Hinton*, 423 F.3d 355 (2005) (noting that 911 calls are made for several reasons, such as preserving health and safety and providing information to police; in instant case, call was nontestimonial because caller sought assistance); *Marquardt v. Maryland*, 164 Md.App. 95, 120–23, 882 A.2d 900 (2005) (declining to decide whether all 911 recordings are testimonial or nontestimonial, but holding that when primary concern is obtaining help, statement is nontestimonial); *State v. Wright*, 701 N.W.2d 802, 811 (Minn.2005) (declining to adopt a rule that all statements made during 911 calls are testimonial); *State v. Davis*, 154 Wash.2d 291, 111 P.3d 844, 850 (2005) ("It is necessary to look at the circumstances of the 911 call in each case to determine whether the declarant knowingly provided the func-

tional equivalent of testimony to a government agent."), *cert. granted*, —— U.S. ——, 126 S.Ct. 547(2005). In *Davis*, the Washington Supreme Court explained that "[i]n most cases, one who calls 911 for emergency help is not 'bearing witness,' whereas calls made to the police simply to report a crime may conceivably be considered testimonial." *Davis*, 111 P.3d at 850; *see also United States v. Brun*, 416 F.3d 703, 707 (8th Cir. 2005) (holding that statements of adolescent boy to 911 operator while witnessing altercation were nontestimonial); *Leavitt v. Arave*, 383 F.3d 809, 830 n. 22 (9th Cir.2004) (determining that statements of murder victim to 911 operator and to responding officers made during and immediately after an attempted break-in at her home were not testimonial), *cert. denied*, —— U.S. ——, 125 S.Ct. 2540, 162 L.Ed.2d 277 (2005); *Pitts v. State*, 272 Ga.App. 182, 612 S.E.2d 1, 5 (2005) (holding that 911 call made while the incident is actually in progress for the purpose of stopping or preventing the crime is nontestimonial), *cert. granted*, No. S05G1156, 2005 Ga. LEXIS 534, at *1 (Ga. Sept. 19, 2005); *People v. Marino*, 21 A.D.3d 430, 800 N.Y.S.2d 439, 440–41 (N.Y.App.Div.2005) (concluding that tape of 911 call and hysterical statements to responding officers nontestimonial).

▮ ¶ 24 We conclude that whether statements made to a 911 dispatcher are testimonial or nontestimonial must be determined on a case-by-case basis. Here, the facts support the trial court's conclusion that Allred's statement that Williams had just threatened to kill her is not testimonial. This is true whether the statement is treated as a remark made to Sanders or to the 911 dispatcher. If made to Sanders, it was not made to any agent of the government and has none of the indicia of a testimonial statement. Like the statement, "Oh, my God, it's [Williams]," it was made to a friend immediately upon the happening of the event and with no reasonable expectation that it would be used in a later legal proceeding.

▮ ¶ 25 Even if it is assumed that Allred intended the statement to be made to the 911 operator, it does not qualify as testimonial. Allred's statement that Williams had threatened to kill her was made while the

incident was occurring and during a call placed to 911 for the purpose of seeking protection from immediate danger. At the time the statement was made, Williams had blocked Allred's vehicle with his own and was approaching Allred and Sanders in a rage. The undisputed testimony is that Allred was upset and frightened. The call was initiated by Sanders and Allred, not by the police. Furthermore, the information conveyed was designed to communicate the nature and seriousness of the problem. There is nothing in the record to suggest that Allred objectively foresaw that the statement might be used to prosecute Williams. Under these facts, we hold that even if the statement had been made directly to the 911 operator, it is nontestimonial.

¶ 26 Therefore, Allred's statements could properly be admitted through Sanders if they were reliable under a long-standing exception to the hearsay rule. *See Crawford v. Washington,* 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Rule 803(2) of the Utah Rules of Evidence sets forth the "excited utterance" exception to the hearsay rule:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>   . . . .
>
> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition.

Utah R. Evid. 803(2). It appears that Allred's comments introduced through Sanders fall squarely within this long-recognized exception to the hearsay rule.[6] She was startled both by the initial recognition of Williams and also by his threat to kill her. When she made the statements she was still under the stress of the excitement caused by the event and, in fact, the encounter with Williams was ongoing at that time. Allred's statements fall under the excited utterance exception to the hearsay rule, are not testi-

---

6. The statements also fall within the "present sense impression" exception to the hearsay rule.

---

monial, and were properly admitted by the trial court.

### III. Officer Don Ouimette's Testimony

¶ 27 Williams also challenges Officer Ouimette's testimony, arguing that it contained Williams's inadmissible hearsay statement threatening to kill Allred. At trial, defense counsel offered the police report about the incident into evidence. Officer Ouimette then read the entire report from the stand, including the following description of events: "[Allred] states that eventually [Williams] got her pinned in and got out of his car and began yelling, quote, 'I'm going to . . . kill you'. . . ."

¶ 28 "[O]n appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993). The "invited error" doctrine serves two purposes: first, it allows the trial court the first opportunity to address the claimed error, and second, "it discourages parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal." *Id.; see also State v. Dominguez,* 2003 UT App 158, ¶¶ 32–33, 72 P.3d 127 (holding that challenged testimony was elicited by defense counsel's cross-examination, so any error was invited); *State v. Hall,* 946 P.2d 712, 715 (Utah Ct.App.1997) (concluding that defendant could not complain of admitted testimony because he led the trial court into error); *State v. Perdue,* 813 P.2d 1201, 1205 (Utah Ct.App.1991) (holding that invited error precluded a party from appealing a jury instruction that the party requested).

¶ 29 Here, it was Williams who offered the police report into evidence. Furthermore, Williams offered no objection when Officer Ouimette read the statement from the police report. Williams may not now complain of error, assuming there was error, that he led the trial court into committing.

*See* Utah R. Evid. 803(1).

## CONCLUSION

¶ 30 The trial court was correct that the statements of Allred entered into evidence through Sanders were nontestimonial and within long-recognized exceptions to the hearsay rule. The testimony of Officer Ouimette was offered by Williams, and he cannot now claim error based on its admission. For these reasons, the decision of the trial court is affirmed.

¶ 31 I CONCUR: PAMELA T. GREENWOOD, Judge.

THORNE, Judge (dissenting):

¶ 32 The majority's analysis of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) is both insightful and, I believe, largely correct.[1] The majority correctly concludes that whether an out-of-court communication is "testimonial" depends on the circumstances surrounding the communication. Up to that point, I join with the majority opinion. However, I part ways with the majority when, after acknowledging that the question is factual in nature, it decides whether the communication in this case is testimonial instead of remanding the question to the trial court for a factual determination.

¶ 33 It is a cornerstone of our appellate process that we do not make factual findings. *See Bailey v. Bayles*, 2002 UT 58, ¶ 19, 52 P.3d 1158. We are limited to the record before us and the factual findings as presented by the trial court. *See American Fork City v. Singleton*, 2002 UT App 331, ¶ 6, 57 P.3d 1124. In the absence of such findings, we ought not substitute our own. Instead, we should remand, when allowed, and permit the trial court to first address the issue. *See Singleton*, 2002 UT App 331 at ¶¶ 6–11, 57 P.3d 1124 (vacating and remanding a defendant's guilty plea because "the trial court failed to make findings of fact or conclusions of law regarding whether there was probable cause to arrest" the defendant); *see also* 5 C.J.S. *Appeal and Error* § 710 (1993) ("[T]he reviewing court is confined to the facts specially found by the trial court.... [It] may not make findings of fact for or against appellant, and cannot consider evidence to find facts or make a decision upon them or supplement the facts found by the trial court with any additional facts[.]" (footnotes omitted)).

¶ 34 Here, it is undisputed that the trial court failed to address, in any substantive way, the question of whether the out-of-court communication was testimonial in nature. Instead, when presented with Williams's *Crawford* challenge, the trial court announced only that the statements were admissible as hearsay exceptions under the Utah Rules of Evidence. *See* Utah R. Evid. 803(1)-(2) (defining the present sense impression and excited utterance exceptions to the hearsay rule). As a result, we have no findings concerning the circumstances surrounding the communication. Absent trial court findings, we are in no position to appropriately determine the outcome of this issue. *See Singleton*, 2002 UT App 331 at ¶¶ 6–11, 57 P.3d 1124. Instead, we should remand this case to the trial court for consideration of whether the circumstances of the communication render it testimonial under *Crawford*.

---

1. The majority properly concludes that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), is not implicated unless the totality of the circumstances surrounding an out-of-court communication renders it "testimonial." However, I part ways with the majority when it suggests that *Crawford* should be read in the narrowest possible terms. By contrast, I read *Crawford* to suggest a very broad interpretation of the term "testimonial." *See id.* at 56, 124 S.Ct. 1354 ("[T]here is scant evidence that [hearsay] exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case[.]"). I believe that *Crawford* was written to severely limit the admission of any out-of-court statement that directly bears on the guilt or innocence of a criminal defendant. As a result, under *Crawford*, many out-of-court communications that have been permitted under the rules of evidence as excited utterances or present sense impressions may now be inadmissible. *See* Utah R. Evid. 803(1)-(2). Consequently, I believe a *Crawford* analysis should not turn on whether the communication was made in the heat of the moment, but on whether a reasonable person would conclude that the communication contained evidence of a defendant's wrongdoing, coupled with a conclusion that the speaker knew or should have known that the communication was likely to be utilized as substantive evidence of guilt.

¶ 35 Accordingly, although I agree with the majority's view that the totality of the circumstances must be examined to determine whether an out-of-court communication is testimonial, I dissent from its decision to examine those circumstances here in the absence of trial court findings. As a result, I also must dissent from the result reached by the majority, and would instead remand the question to the trial court.